**James Edward HALL, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 10992.**

United States Court of Appeals
Fourth Circuit.

Argued Feb. 7, 1969.

Decided May 13, 1969.

---

Fred C. Alexander, Jr., Alexandria, Va., (Court-appointed counsel) for appellant.

Stefan C. Long, Asst. U. S. Atty., (C. V. Spratley, Jr., U. S. Atty., on brief) for appellee.

Before SOBELOFF, CRAVEN, and BUTZNER, Circuit Judges.

CRAVEN, Circuit Judge:

James Edward Hall seeks a third new trial after having been twice convicted and thrice sentenced for kidnapping. We deny his appeal and affirm the validity of his second trial and sentence, treating the third sentence as surplusage.

On prior appeal, Hall v. United States, 295 F.2d 26 (4th Cir. 1961), we noted that the kidnapping charge was not denied,[1] and that insanity at the time of commission of the act was Hall's sole defense. We held that there was evidence sufficient to raise a question of his sanity at the time of the commission of the offense and that the district court erred in not submitting that issue to the jury, and we remanded for a new trial.

On April 12, 1962, the second trial was held and Hall was again convicted by a jury. Consistent with the position taken in the prior appeal, Hall's counsel contended only that Hall was innocent by reason of insanity at the time of the offense. Such a defense posture, and the statements contained in our prior opinion, not unnaturally diverted the attention of the United States Attorney and the court to what was thought to be the only real issue at the trial. Other assignments of error on this appeal entirely unrelated to the insanity defense are grounded in this distraction. During the trial it was not suggested that Hall's behavior was bizarre or unusual or that he was unable to cooperate and intelligently communicate with and understand counsel. Insanity was urged at the time of the kidnapping; *not* at the time of the trial.

Sentencing was set for May 28. On that day, Hall and his lawyer appeared, and counsel moved the court for a further psychiatric examination of Hall, stating that his client seemed completely irrational and unreasonable, and expressing a non-medical opinion that Hall was presently insane. After colloquy with Hall's counsel and the Assistant United States Attorney, the district judge denied the motion for a further psychiatric examination, and after affording Hall the right to allocution, sentenced him to life imprisonment with provision that he be immediately eligible for parole in the discretion of the Parole Board. The district judge reasoned that the entire second trial in April was devoted to the question of Hall's mental competency and mental condition and that it was futile to pursue the matter again in May. He also noted that Hall had been examined

---

1. The following is a condensed version of the facts conceded on prior appeal, as narrated in footnote 1 of our opinion, 295 F.2d 26, 27:

On the afternoon of July 21, 1959, James Edward Hall and another person escaped from a prisoners' road gang engaged in highway work in Fairfax County, Virginia. To avoid recapture, they hid in the woods for two days and a night, and on the morning of July 23 entered Peter Martin Nielson's home in McLean, Virginia, removed $50 from his wallet, and forced him to accompany them in his automobile. Their journey, which lasted until sometime after noon on the following day, carried them through the District of Columbia, Maryland, New Jersey, Pennsylvania, Ohio, West Virginia and, finally, to the home of an acquaintance of Hall near the town of Washington, Pennsylvania. On the evening of July 24, Nielson was released unharmed. Hall and his fellow escapee were apprehended the next evening.

by the jail medical doctor (who was said to have had some courses in psychiatry) quite recently. Although the record is not entirely clear, the statements of counsel indicate that the jail doctor had reported that Hall was "all right" on the day of sentencing. No appeal was taken from the judgment and sentence of May 28, 1962.

In August 1965, Hall filed a motion to vacate sentence under 28 U.S.C. § 2255, alleging 19 errors in his second trial, one of which was that the 1962 sentencing was invalid because of his mental incompetence on May 28th. During the August 1965 hearing it appeared that neither Hall nor his counsel contended that Hall was *then* incompetent. Without ruling that the 1962 sentence had been improper or irregular or invalid because of the alleged mental incompetence at the time of sentencing, the district court, nevertheless, resentenced Hall at the conclusion of the hearing on the motion to vacate sentence in August 1965. The district judge thought that since the jury had determined Hall's mental competency at the time of the commission of the offense, and since it had never been urged by either Hall or his counsel that he was incompetent during the April 1962 second trial, and since it was now conceded that Hall was mentally competent in August 1965, his possible incompetency in May 1962 when he was sentenced was, at most, an irregularity which could be corrected by resentencing at a time when he was admittedly competent.

■■ We treat the 1965 resentencing as surplusage and, therefore, need not consider its effect. We hold that the May 1962 sentencing was not invalid and that the district court did not abuse its discretion in refusing, under the circumstances, to institute further judicial proceedings to determine the competency of the accused to be sentenced. Our decision that the 1962 sentence was a valid final judgment has the procedural effect of invalidating Hall's purported direct appeal from the sentence and judgment imposed. The time for appeal from the

1962 sentence has, of course, long since expired. Since the 1965 resentencing is treated as surplusage, it follows that this appeal is from the 2255 collateral attack on the 1962 sentence rather than a direct appeal from the resentencing in 1965 as contended by Hall.

■■ Ordinarily our scope of review would be sharply narrowed and limited to errors of constitutional dimension going to the fundamental fairness of the trial. See Kaufman v. United States, 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227 (Mar. 24, 1969). But in this peculiar fact situation, considering the manifestation of doubt by the district judge that his 1962 sentencing was valid, we think it inappropriate to apply the usual rule and instead treat the several assignments of error as fully as we would on direct appeal.

### THE 1962 SENTENCING

■■ 18 U.S.C. § 4244 requires the court on proper motion to order a psychiatric examination for a defendant when at any time after arrest and before imposition of sentence there is reasonable cause to believe that he is insane or otherwise mentally incompetent. It is Hall's claim that such reasonable cause was provided by his lawyer's report to the court that Hall was irrational and insane on the day set for sentencing. We agree, but it does not follow, we think, that upon such a showing the district court is stripped of discretion and must blindly and automatically implement the statutory machinery.

Most of the cases considering allegations of defendants' mental incompetency are concerned with alleged incompetency prior to or at trial. As the Supreme Court has said, the

> "test must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960).

The reason for this concern is obvious, as the mental condition of an accused bears directly on his ability to participate effectively and intelligently in his own defense. When the issue of mental competency relates only to the time of sentencing, there is less danger that any substantive rights of a defendant would be prejudiced if he then suffers some degree of incompetence. But the idea of sentencing an insane person to prison remains offensive and is incompatible with the dignity of the judicial process.[2]

■■■■■ The accused's "mental competency" under 18 U.S.C. § 4244 is to be be determined by the trial court, and its determination is not to be set aside on review unless clearly arbitrary or unwarranted. Feguer v. United States, 302 F.2d 214, 236 (8th Cir. 1962). In making such a determination, the presence of some degree of mental illness is not to be equated with incompetence to be sentenced. Cf. Lebron v. United States, 97 U.S.App.D.C. 133, 229 F.2d 16, cert. denied, 351 U.S. 974, 76 S.Ct. 1035, 100 L.Ed. 1492 (1955). We have previously noted that Hall's entire second trial had been devoted to the question of his mental competency. Three psychiatrists had testified and a letter from a fourth had been admitted. It is true that the issue at trial was his mental condition at the time of the offense, but the psychiatric testimony was not confined to that particular point in time. We have also noted that the jail doctor, Dr. Love, was acknowledged by defense counsel to have concluded that Hall was not insane shortly prior to sentencing. Since the court was thoroughly acquainted with Hall's mental condition, and had recently (during the prior month) been exposed to the testimony of

3 psychiatrists, we are not prepared to say that the court's determination that Hall was competent for sentencing was unwarranted, Feguer v. United States, 302 F.2d 214, 238 (8th Cir. 1962); McIntosh v. Pescor, 175 F.2d 95 (6th Cir. 1949); cf. Nobles v. Georgia, 168 U.S. 398, 18 S.Ct. 87, 42 L.Ed. 515 (1897), and we reject Hall's contention that repeated psychological examinations are required by the statute. See Hereden v. United States, 286 F.2d 526 (10th Cir. 1961).

Under the peculiar circumstances of the case, we think the mandate of 18 U.S.C. § 4244 inapplicable. It is an unspoken premise of the statute that there has been no psychiatric examination sufficiently close in point of time to aid the court in determining competency. If it were not so, any defendant who wished to avoid sentencing could do so indefinitely by day-to-day assertions of incompetency, for that he was sane yesterday does not foreclose the possibility of insanity today.

■■■■■ In reaching the merits, we reject the proposition that a federal prisoner may not collaterally attack his judgment and sentence on the ground that he was insane at the time of sentence if this issue was raised and determined by the trial court, as it was here. Floyd v. United States, 365 F.2d 368, 375 n.10 (5th Cir. 1966); Nunley v. Taylor, 330 F.2d 611 (10th Cir. 1964); see Kaufman v. United States, 394 U.S. 217, 89 S.Ct. 1068, 1074 and n. 8, 22 L.Ed.2d 227 (Mar. 24, 1969). But see Hereden v. United States, 286 F.2d 526 (10th Cir. 1961). The question is not how often a federal prisoner may have the question adjudicated but whether it has been done once fairly and sufficiently.

2. One mentally incompetent may be said to be not effectively present.
 "Respect for the dignity of the individual is at the base of the right of a man to be present when society authoritatively proceeds to decide and announce whether it will deprive him of liberty. It shows a lack of fundamental respect for the dignity of a man to sentence him in absentia. The pres-

sence of the defendant indicates that society has sufficient confidence in the justness of its judgment to announce it in public to the convicted man himself. Presence thus enhances the legitimacy and acceptability of both sentence and conviction." Note, Procedural Due Process at Judicial Sentencing for Felony, 81 Harv.L.Rev. 821, 831 (1968).

## THE INDICTMENT

Hall asks us to rule that the indictment under which he was tried both times was invalid, in that it did not charge an offense. Title 18 U.S.C. § 1201(a) speaks of the victim's being "carried away and held for ransom or reward or otherwise * * *." The indictment charged that one Peter Martin Nielson had been "carried away for ransom reward and otherwise" thus appearing nowhere to charge a "holding" of the victim. Hall contends that the absence of the key words "and held" constitutes a prohibited indefiniteness in the "written statement of the essential facts constituting the offense charged," required by Fed.R.Crim.P. 7(c).

Unless an indictment is so facially defective as to fail to charge an offense, it may not be challenged on a motion to vacate sentence. Goto v. Lane, 265 U.S. 393, 402, 44 S.Ct. 525, 68 L.Ed. 1070 (1924); Gourneau v. United States, 390 F.2d 320 (8th Cir. 1968); Dawson v. United States, 292 F.2d 365 (9th Cir. 1961); McGann v. United States, 249 F.2d 431, (4th Cir.), cert. denied, 356 U.S. 923, 78 S.Ct. 708, 2 L.Ed.2d 718 (1957). This is properly a matter for direct appeal. Stegall v. United States, 259 F.2d 83 (6th Cir.), cert. denied, 358 U.S. 886, 79 S.Ct. 128, 3 L.Ed.2d 114 (1958).

In United States v. Martell, 335 F.2d 764 (4th Cir. 1964), we considered a direct appeal from a conviction under 18 U.S.C. § 1201. Though the indictment there did not use the word "held," it charged that Martell "did fail to release" the victim, and we found the indictment not insufficient, on the ground that use of "words of similar import" to the statute, Finn v. United States, 256 F.2d 304, 306 (4th Cir. 1958), sufficed. Hall's indictment charged transportation of the victim from Fairfax County, Virginia, into the state of Pennsylvania. Examination of a map reveals that the state lines of Virginia and Pennsylvania are nowhere contiguous. Therefore, at least two state lines were implicitly alleged in the indictment to have been crossed. The time elapsed after the crossing of the first line but before the crossing of the second necessarily constitutes a "holding" for at least that period of time, before the further interstate transportation of the victim, and the framing of the indictment was adequate to imply that. *Cf.* Sanford v. United States, 169 F.2d 71 (8th Cir. 1948).

Because we conclude that this indictment sufficiently apprised Hall of the charges that he need prepare to meet, United States v. Hansen, 264 F.2d 540 (9th Cir. 1958), and enabled him to plead the judgment in bar of further prosecution for the same offense, United States v. Behrman, 258 U.S. 280, 42 S.Ct. 303, 66 L.Ed. 619 (1922), we find the indictment not so insufficient as to fail to charge an offense under the kidnapping statute, by reason of omission of the words "and held." *Accord,* Waley v. United States, 178 F.2d 311 (9th Cir. 1949); Burns v. United States, 210 F. Supp. 528 (W.D.Mo.1962), aff'd, 321 F.2d 893, cert. denied, 375 U.S. 959, 84 S.Ct. 448, 11 L.Ed.2d 317 (1963); *cf.* United States v. Martell, 335 F.2d 764 (4th Cir. 1964).

Chatwin v. United States, 326 U.S. 455, 66 S.Ct. 233, 90 L.Ed. 198 (1946), is not controlling here. The Supreme Court there considered convictions secured pursuant to a kidnapping indictment which did charge a holding. The Court, in reversing the convictions, found that there was no evidence that any restraint at all had actually been imposed upon the supposed victim. Here, proof of restraint is not lacking, nor is it alleged to be.

Further attacking the sufficiency of the indictment Hall contends that where the government intends to rely on the "or otherwise" portion of the statute specifying holding for "ransom, reward or otherwise," the indictment must itself specify the reason for the holding— here, to facilitate escape following a prison break. We disagree, and hold

the "or otherwise" specification in the indictment sufficient alone. *Accord,* Loux v. United States, 389 F.2d 911 (9th Cir. 1968), cert. denied, 393 U.S. 867, 89 S.Ct. 151, 21 L.Ed.2d 135 (1968); United States v. Bentley, 310 F.2d 685 (6th Cir. 1962); Dawson v. United States, 292 F.2d 365 (9th Cir. 1961). *But see* United States v. Varner, 283 F. 2d 900 (7th Cir. 1960). Neither do we find merit in Hall's contention that the "or otherwise" specification is *per se* inadequate when used in an indictment which fails to charge a "holding." [3]

## SUFFICIENCY OF THE EVIDENCE

█ Hall claims that if the indictment did charge an offense, its allegations were not proved by the government. The record, however, reveals an abundance of proof tending to show that the charged offense was committed by Hall and another. In presenting its case the government had introduced testimony by a guard to the effect that a day or so prior to the kidnapping Hall had escaped from a State Convict Road Force; Nielson's deposition from the first trial had been read into evidence recounting the events of the kidnapping and stating that it was Nielson's car which the escapees had used to effect their flight with him into Pennsylvania. This is not a case where there is no evidence that a crime was committed.

█ Hall also complains that the court incorrectly summarized the evidence to the jury, charging erroneously that the purpose of the kidnapping was "to effectuate their escape from rearrest or recapture as prison camp escapees in Virginia." No objection was interposed at the time. Since there was clearly some evidence supporting the conviction, Hall's assertions of the insufficiency of the evidence, Davis v. United States, 392

F.2d 291 (10th Cir. 1968), and of error in the judge's instructions, Feeney v. United States, 392 F.2d 541 (1st Cir. 1968), would not be ordinarily reviewable in this collateral proceeding. But for reasons previously stated we have considered them and find them to be without merit.

## THE CAPITAL LIST OF WITNESSES

Raising a point based on the government's failure to comply with a governing statute, Hall claims he is entitled to relief because the government did not furnish him with a list of witnesses three days before commencement of trial, as is required in capital cases by 18 U.S.C. § 3432. It is his position that as the indictment did not allege that the victim was released unharmed it necessarily charged a capital offense, and the capital list was required.

█ Provision for this capital list is mandatory, and failure to provide it in a capital case is ordinarily reversible error. Here, however, we think the list was not required. When defense counsel raised the point that he had not received the capital list which court records showed had been sent to him, the court ascertained that only witnesses who had appeared at the first trial of which counsel had a transcript would be called by the government, and the United States Attorney disavowed any intention of seeking the capital penalty. The court stated:

> "In view of the fact that the Government contends that this is not a capital case * * * and the Court does not consider it a capital offense, and, of course, will not charge the jury for a capital offense.

> The motion is denied.

---

3. The best that can be said for this indictment is that it is minimally sufficient. A properly drawn indictment is a skillful blend of fact and law. The words "or otherwise" in the statute invite the draftsman to supply a reason other than

ransom or reward. Why he declined the invitation in the context of this case is beyond our comprehension. Omission of the words "and held" in the context of a conjunctive rather than disjunctive statute is inexcusable.

And on the further ground that I think counsel had all of this information more than three days or it has all been available to him."

Therefore, from the beginning the trial was understood not to present the possibility of a capital sentence, and failure to provide the capital list is not a ground for relief.

 A similar result was reached by the Ninth Circuit in Loux v. United States, 389 F.2d 911 (9th Cir. 1968), where the court held that the procedural safeguards normally provided in capital cases were not required where, even though a kidnapping indictment did not allege that the victim was released unharmed, there was an express agreement, stated in open court, that the United States bound itself not to ask for the death penalty. Moreover, here we think the purpose for which the list is usually required was otherwise met. This was a re-trial, and only witnesses who appeared at the first trial were called at the second. Consequently the defense was not surprised and denied an opportunity to prepare to examine witnesses and to meet their testimony. As the avoidance of such surprise is the purpose of requiring the list, United States v. Gregory, 266 F.Supp. 484 (D.D.C.1967) that purpose was amply met.

## THE TESTIMONY OF THE GOVERNMENT'S PSYCHIATRIST

 Hall raises a further issue concerning the propriety of the testimony elicited from the government's psychiatrist at the second trial. The question and the answers objected to are as follows:

> The Court: "Did he know it was a crime?"
>
> Dr. Kline: "I suspect he knew it. I would say he probably did know it. He told me that at the time that they were waiting they didn't have the time to secure and leave him [Nielson] there and that was the reason they were, I suppose, afraid of the guards or the police, coming in."

\* \* \* \* \* \*

> "He related to me they didn't actually tie him up and leave him there, that would have taken too long; and he was obviously trying to do something that he knew was in conflict [with what] would be permissible by society."

Title 18 U.S.C. § 4244 provides that

> "No statement made by the accused in the course of any examination into his sanity or mental competency provided for by this section, whether the examination shall be with or without the consent of the accused, shall be admitted in evidence against the accused on the issue of guilt in any criminal proceeding."

Assuming, without deciding, that this testimony amounts to the revelation of a "statement made by an accused," we do not think the reception of such testimony, in the context of a case in which the only real issue was mental condition, amounts to "plain error" that should be noticed despite the failure to object. Fed.R.Crim.P. 52. As we said earlier, Hall has never denied perpetration of the elements of the crime. It was deliberate defense strategy to admit the elements of the offense and deny mental responsibility. Indeed, defense counsel's closing argument to the jury was in part,

> "I think that this man is mentally ill and I don't think that you can find beyond a reasonable doubt that this man *at the time he committed this crime* knew the difference between right and wrong and was able to adhere to the right and to refrain from wrong \* \* \*."

\* \* \* \* \* \*

> "And I do not believe that you can find beyond a reasonable doubt that this man was sane *at the time he committed that crime.*" (Emphasis added.)

In these circumstances we find the error, if any, in admission of the testimony of the psychiatrist to have been harmless. United States v. Albright, 388 F.2d 719 (4th Cir. 1968).

## THE COMPETENCY OF COUNSEL

Hall's last claim is that he did not receive the effective assistance of counsel in that his lawyer failed to demand that venue be laid in the District of Columbia where the applicability of the Durham Rule would have been more favorable to an insanity defense; that his lawyer failed to attack the inadequacy of the indictment; and that his lawyer failed to move at the conclusion of the government's case for a directed verdict.[4]

On the venue question, the record reveals that Hall's codefendant made several motions prior to trial for change of venue, and the motions were denied. Though it does not appear that Hall's lawyer joined in these motions, their denial suggests that Hall was not prejudiced by counsel's failure; neither can we say that the denial of the codefendant's motions did not reasonably contribute to the lawyer's failure subsequently to make such motion. Moreover, we reject as frivolous the contention that a criminal defendant is entitled as a matter of right to a more favorable forum.

Our conclusion, above, that the indictment was sufficient to charge an offense and to enable defendant to prepare for trial sufficiently indicates that Hall was not prejudiced by counsel's failure to attack the indictment.

As the government's evidence, summarized above, was sufficient, counsel's failure to move for a directed verdict at the conclusion of the government's case could hardly have prejudiced Hall.

Neither do we think that these three omissions of counsel taken together amount to a showing of ineffective representation. The representation here was far from creating that impairment of substantive rights which is recognized as denial of counsel under the Sixth Amendment. Coles v. Peyton, 389 F.2d 224 (4th

Cir. 1968); Vess v. Peyton, 352 F.2d 325 (4th Cir. 1965); Fowler v. Peyton, 266 F.Supp. 252 (W.D.Va.1967).

The decision of the district court denying the motion to vacate sentence under 28 U.S.C. § 2255 will be

Affirmed.

---

4. It is unnecessary to consider Hall's claim that he was without the effective assistance of counsel at his 1965 resentencing since that sentencing is treated as surplusage.