**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Isaac FOGEL, Defendant–Appellant.**

**No. 89–5112.**

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 7, 1989.

Decided April 4, 1990.

As Amended April 24, 1990.

Albert David Brault (Janet S. Zigler, Brault, Graham, Scott & Brault, on brief), Harley Thomas Howell (James A. Johnson, Semmes, Bowen & Semmes, on brief), for defendant-appellant.

David Paul King, Asst. U.S. Atty. (Breckinridge L. Willcox, U.S. Atty., on brief), for plaintiff-appellee.

Before RUSSELL and WILKINSON, Circuit Judges, and BUTZNER, Senior Circuit Judge.

DONALD RUSSELL, Circuit Judge:

Following a six-day trial by jury, the appellant, Isaac Fogel, was convicted of converting government property, in violation of 18 U.S.C. § 641, and cutting timber growing on public lands of the United States, in violation of 18 U.S.C. § 1852. He was found guilty on both counts and sentenced to fifteen days' confinement in a halfway house, fined $20,000, ordered to perform 300 hours of community service, and ordered to make restitution for the government property destroyed. This appeal followed. We affirm.

I.

The appellant was the owner of a piece of property in Maryland's Potomac River Valley, the value of which would be vastly increased had it a view of the river. Unfortunately for the appellant, between his property and the river lay the C & O Canal National Historical Park. Further, his property was subject to certain timbering restrictions by way of easement, duly recorded, in favor of the United States. This easement prohibited Fogel from cutting down any tree growing on his property that measured in excess of six inches in diameter at breast height.

Although both he and his wife had been fully apprised by officers of the United States National Park Service that to do so would be both illegal and a detriment to a unique environment, the appellant resolved to fell trees on his property as well as on federal land in order that he might improve his view and hence the value of his property. To such an end, the appellant contacted Suburban Tree Service about performing removal services behind his house. Gary Ralph, owner of Suburban Tree Service, and Michael Looney, an employee, then visited the Fogel site and agreed to remove undergrowth and limbs from the larger trees for a fee of $650. At trial, Ralph testified that he was never told nor was he ever aware of the easement or the park boundary and believed the entire property to belong to the appellant. After a full day of work, the appellant, Ralph, and Looney met to discuss the work completed. At that time the appellant expressed displeasure with the job because not enough timber and brush had been cut. At the direction of the appellant, Ralph's crew returned the next day and cut down approximately 100 trees located on national park land and 12 trees over six inches in diameter, and hence protected by the easement, on the appellant's property.[1] Thereafter, a park ranger discovered the cutting and this indictment ensued.

---

**1.** Fogel asserted at trial that during the course of the timbering he was in California and made no contact with Ralph about the job. The jury rejected this assertion, and we find no occasion now to disturb the finding of the jury based on this continuing assertion.

## II.

The appellant first contends that count one of the indictment, charging him with violating the provisions of 18 U.S.C. § 641, was fatally defective in that it failed to allege that he acted with specific intent to convert to his use or to dispose of the government property described therein.

The language of 18 U.S.C. § 641 provides in relevant part that:

Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof [shall be guilty of an offense].

In count one of its indictment, the government charged, *inter alia,* that the appellant "did knowingly convert and did, without authority, dispose of a thing of value of the United States ... to wit, 126 trees and saplings, more or less, which had been cut down on lands owned by the United States."

 Because the appellant's objection to this indictment was made after the jury rendered its verdict, any review for alleged defect is to be reviewed, if at all, under a liberal standard and "every intendment is ... indulged in support of the sufficiency." *Finn v. United States,* 256 F.2d 304, 306–07 (4th Cir.1958).[2] Here, the indictment simply mirrored the language of the statute in setting forth the offense charged, and charged both a criminal act and a criminal intent.

 An indictment that tracks the statutory language is ordinarily valid. Fed.R.Crim.P. 7; *United States v. American Waste Fibers Co.,* 809 F.2d 1044 (4th Cir.1987). One of the principal purposes of an indictment is to apprise the accused of the charge or charges leveled against him so he can prepare his defense. *See United States v. Miller,* 471 U.S. 130, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985). The indictment here is sufficiently detailed to serve this purpose, and the appellant's contention that the language fails to allege specific intent is simply an awkward attempt to fabricate an issue for appeal. Although the indictment did not employ the word "intentionally," the word "knowingly," an adverb of similar import and context, and the word found in the statute, did appear. We find the distinction between the two words to be inconsequential and find no authority to suggest that failure to draft the indictment to include the word "intentionally" renders that indictment infirm. The use of either term to describe the criminal mind of the appellant would have been sufficient to inform the appellant of the charge against him. Here, the government chose the word "knowingly" to describe the appellant's purposeful activity. Therefore, the indictment brought against the appellant is complete in that it charges each element of the predicate offense, both *actus reus* and *mens rea,* giving appellant full notice of the charge against which he must defend.[3]

## III.

 The appellant next asserts that the evidence was insufficient to support a verdict of guilty under 18 U.S.C. § 641. Specifically, the appellant asserts that there is no evidence that he converted the trees to his own use. The law of Section 641 stands contrary to such an assertion. Conversion under Section 641 does not require that the accused actually keep the property for personal use. The modern tendency, codified in Section 641, is to broaden the offense of conversion to include intentional and knowing abuses or unauthorized uses of government property but which do not fit within

2. When an objection to the sufficiency of an indictment is made after verdict, review is left to the discretion of the appellate court. *See United States v. Wabaunsee,* 528 F.2d 1, 2 (7th Cir.1985). *See also United States v. Hooker,* 841 F.2d 1225 (4th Cir.1988); *United States v. Pupo,* 841 F.2d 1235 (4th Cir.) *cert. denied,* —— U.S. ——, 109 S.Ct. 113, 102 L.Ed.2d 87 (1988).

3. In view of our ruling the government's motion to supplement the record becomes moot, and we therefore dismiss the motion.

the traditional common law definition of conversion. *Morissette v. United States*, 342 U.S. 246, 266–68, n. 28, 72 S.Ct. 240, 251–52, n. 28, 96 L.Ed. 288 (1952). *See also United States v. Hill*, 835 F.2d 759, 763–64 (10th Cir.1987) (section 641 now covers myriad trespasses against government property).

■ The evidence in this case is clear. The appellant cut down trees valued in excess of $30,000 to enhance his view and hence the value of his property,[4] substantially and criminally interfering with the government's use of that property. We hold this to be sufficient to sustain the conviction under Section 641.

## IV.

After the criminal indictment was brought against the appellant, he filed a civil suit in Maryland state court against Gary Ralph and Suburban Tree Service, alleging that Ralph was in breach of contract, had slandered and libeled him by making false statements to federal authorities, and was responsible for indemnifying him for the outcome of the cutting. Appellant's criminal counsel, Joshua Treem, drafted the civil complaint and represented him during the discovery phase of the civil matter. During the criminal trial, the government introduced into evidence (without objection) the civil complaint to impeach the appellant, as several allegations in the civil suit were inconsistent with his trial testimony. To combat the effects of such impeachment, the appellant made an attempt to call Treem to the stand to explain the drafting of the complaint and any inconsistencies found therein. Upon objection from the government, the district court refused to allow defense counsel to testify. The court then also denied a motion for a mistrial.

By filing the civil complaint in advance of his criminal trial, the appellant was afforded the rare opportunity of deposing those who may testify against him in advance of trial and then using the deposition testimo-

ny for impeachment purposes, which he did. Unfortunately for the appellant, this strategy worked to his detriment, as the prosecution was also able to use documents filed in that suit against him. As a court of appeals, we are here without authority or inclination to soften the blow on a criminal defendant when an accepted, if not ill-advised, strategy backfires.

■ The question of whether an attorney is competent to testify is committed to the discretion of the district court, subject to the normal review for abuse. *United States v. Nyman*, 649 F.2d 208, 211 (4th Cir.1980). Courts have generally frowned on such testimony as a violation of Disciplinary Rule 5–102(A) of the American Bar Association's *Code of Professional Responsibility*. However, when the testimony is important and no other witness would be able to supply it, then such testimony may be allowed. *Universal Athletic Sales Co. v. American Gym Recreational & Athletic Equipment Corp.*, 546 F.2d 530, 539 (3d Cir.) *cert. denied*, 430 U.S. 984, 97 S.Ct. 1681, 52 L.Ed.2d 378 (1977).

■ Here, the appellant was competent to testify as to these inconsistencies, and in fact did. We therefore find no abuse of discretion in the district court's decision to exclude Treem, for to have put him on the stand may have unduly influenced the jury and unnecessarily disrupted the proceeding. *Accord Nyman, supra.*

We believe any abuse of discretion, if extant at all, is to be found on the part of Treem, who, knowing it to be likely that he would be called as a witness in this case, did not withdraw his services as attorney for the defense.

The judgment of the district court is

AFFIRMED.

---

4. According to the testimony of one expert government witness, the cutting of the trees nearly doubled the value of the Fogel estate.