UNITED STATES of America,
Plaintiff–Appellee,

v.

Robert L. CHESNEY, Defendant–
Appellant.

No. 92–50324.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 3, 1993.

Decided Nov. 24, 1993.

Amy M. Karlin, Deputy Federal Public Defender, Los Angeles, CA, for defendant-appellant Chesney.

Lawrence S. Middleton, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee United States of America.

Before: NORRIS, WIGGINS, and O'SCANNLAIN, Circuit Judges.

WILLIAM A. NORRIS, Circuit Judge:

Appellant Robert Chesney was convicted following a jury trial of knowing conversion of public funds, in violation of 18 U.S.C. § 641, filing false claims, in violation of 18 U.S.C. § 287, and money laundering, in violation of 18 U.S.C. § 1956. We affirm.

I

Chesney's convictions stem from an elaborate scheme to defraud the Social Security Administration. Special Agent Joseph Malfero of the Department of Health and Human Services' Inspector General's Office testified at trial that on June 3, 1991, Randy

Illgenfritz, a Social Security Administration Quality Assurance Supervisor, informed him that he had arranged a meeting with Randy Carter, a Social Security Supplemental Income recipient suspected of fraud. At the meeting, Special Agent Malfero recognized Carter as a man that he had seen with a number of different California identification cards and whose true identity he had determined to be Chesney.

After leaving the meeting, a surveillance team began following Chesney. The surveillance team observed him enter several post offices and access a number of different ATM's (Automatic Teller Machines). On June 10, 1991, agents searched Chesney's home pursuant to a search warrant. The agents seized social security cards and applications, California identification cards, checks, bank statements, and ATM cards. The government agents then took Chesney into custody.

Chesney was indicted on twenty counts of conversion of public moneys, filing false claims, and money laundering. A jury returned a guilty verdict on all counts and he was sentenced to 24 months in prison.

Chesney argues on appeal that the indictment charging him with violating 18 U.S.C. § 641 was defective, that he was entitled to an instruction on the necessity defense, and that prosecutors failed to prove every element of an 18 U.S.C. § 1956 violation. Chesney also contends the district court erred in admitting into evidence exhibits which he claims were prejudicial, cumulative and irrelevant. We address each of his claims in turn.

II

At the end of the government's case, Chesney moved to strike nine counts charging him with knowing conversion of public funds in violation of 18 U.S.C. § 641 [1] for failure to state an offense against the United States. The indictment charged, in relevant part,

1. Section 641 provides, in relevant part:

Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or

thing of value of the United States or of any department or agency thereof . . .

Shall be fined not more than $10,000 or imprisoned not more than ten years, or both. . . .

that "defendant Robert Chesney knowingly converted to his own use money belonging to the United States...." Chesney argues the charge failed to express and therefore failed to inform him of the specific intent element of the crime. We review the sufficiency of an indictment *de novo*. *United States v. Tuohey*, 867 F.2d 534, 536 (9th Cir.1989).

■ Chesney relies on *Morissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952), to support his contention that knowing conversion of public funds under § 641 requires a showing of specific intent. Although the charge tracks the language of § 641, Chesney argues that without inclusion of the term "willfully" or "unlawfully," the term "knowingly" alone does not adequately express § 641's specific intent element. We need not decide at this time whether an indictment that only uses the word "knowingly" sufficiently describes § 641's specific intent element. Instead, because Chesney did not object to the sufficiency of the indictment until after the end of the government's case, we liberally construe the indictment in favor of validity and hold that, when liberally construed, the indictment sufficiently apprised Chesney of the crime charged. *See United States v. Pheaster*, 544 F.2d 353, 361 (9th Cir.1976); *United States v. Fogel*, 901 F.2d 23, 25 (4th Cir.1990).

■ An indictment's failure to state an element of the charged offense is a fundamental defect that may be challenged at any stage of a criminal proceeding. *Pheaster*, 544 F.2d at 361. Although objections to defects in an indictment are never waived, "indictments which are tardily challenged are liberally construed in favor of validity." *Id.* In *Pheaster*, the defendant challenged the sufficiency of one count of an indictment in a motion for acquittal after all the evidence had been received in an extensive jury trial. In holding that Pheaster's indictment was adequate, we reasoned that waiting to object to the indictment's sufficiency until the close of evidence "suggests a purely tactical motivation" and "tends to negate the possibility of prejudice in the preparation of the defense." *Id.* The timing of Chesney's objection to the indictment raises the same concerns. Here, Chesney did not challenge the sufficiency of the indictment until the close of the government's case, albeit before the close of his own. As in *Pheaster*, Chesney's challenge came at a point in the proceedings when it was too late for the government to remedy the alleged defect in the indictment and at a point when any prejudice to defendant's case would have been marginal at most.

In *United States v. Fogel*, 901 F.2d 23 (4th Cir.1990), the Fourth Circuit confronted a similar challenge to an indictment charging a defendant with violating § 641. The defendant in *Fogel* argued that the word "knowingly" without the additional term "intentionally" was not sufficient to apprise him of the specific intent element of the crime. *Fogel*, 901 F.2d at 25. Because the defendant failed to object to the sufficiency of the indictment until after the jury rendered its verdict, the Fourth Circuit reviewed the alleged defect under a liberal standard, with "every intendment ... indulged in support of ... sufficiency." *Id.* Applying this liberal standard, the court concluded that use of either the term "knowingly" or "intentionally" "would have been sufficient to inform the appellant of the charge against him." *Id.* Similarly, we hold that, when liberally construed, the indictment in the instant case which tracks the language of § 641 by using the word "knowingly" gave Chesney adequate notice of the charge against him.

### III

■ Chesney also maintains that the district court erred by refusing to give a necessity defense instruction. A defendant is entitled to a necessity defense instruction if he makes a *prima facie* case that meets the legal requirements of necessity. *See United States v. Jennell*, 749 F.2d 1302, 1305 (9th Cir.1984). To make a *prima facie* case of necessity, Chesney must show: (1) he was faced with a choice of two evils and he chose the lesser evil; (2) he acted to prevent imminent harm; (3) he reasonably anticipated a causal relation between his conduct and the harm to be avoided; and (4) there were no other legal alternatives to violating the law. *United States v. Aguilar*, 883 F.2d 662, 693

(9th Cir.1989).[2] Chesney testified that his scheme to defraud the government was part of a long-term and desperate political protest meant to draw the federal government's attention to the plight and the untapped ability of the disabled. Contrary to defendant's contention, Chesney's reason for his illegal conduct fails to satisfy even one of the necessity defense requirements.

## IV

We now turn to Chesney's contention that the district court erred by denying his Rule 29 motion for judgment of acquittal on the two counts of money laundering. Chesney maintains that the government failed to prove that he intended to conceal the ownership and the location of the proceeds. We review a district court's denial of a motion for acquittal in the same manner as a challenge to the sufficiency of the evidence. *United States v. Shirley,* 884 F.2d 1130, 1134 (9th Cir.1989). Thus, we review the evidence presented against Chesney in the light most favorable to the government to determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). We affirm the district court's denial of Chesney's motion for acquittal.

To prove money laundering in violation of 18 U.S.C. § 1956, the government had to show that (1) Chesney conducted a financial transaction involving property that represented the proceeds of the unlawful conversion of public moneys; (2) he knew that the property represented the proceeds of unlawful conversion of social security benefits; and (3) defendant knew the transaction was designed in whole or in part to conceal or disguise the nature, location, source, control, or ownership of the social security benefits. 18 U.S.C. § 1956(a)(1). Chesney maintains that the government failed to prove that he intended to conceal or disguise the location or ownership of the social security funds he stole from the government. We are unpersuaded.

Two government witnesses testified that the Social Security Administration monitors a recipient's financial status. In particular, one witness testified that at the time benefit applications are received, the representative requests a copy of the applicant's bank statement. In other words, a jury could reasonably find that the accounts into which the social security benefits were directly deposited were subject to monitoring by the Social Security Administration. Through the testimony of various government witnesses, the government introduced into evidence a number of exhibits showing that Chesney first deposited the Social Security checks into accounts under his name and an alias and then redeposited social security funds into other accounts under different names. Sometimes Social Security funds were removed from these accounts by Chesney and used to open thrift accounts at totally different institutions, under different names. On this record, a rational jury could find beyond a reasonable doubt that Chesney intended to conceal the ownership and location of the proceeds and was engaged in money laundering in violation of 18 U.S.C. § 1956.

## V

We now turn to Chesney's final argument that the district court abused its discretion by admitting into evidence government exhibits that he claims were irrelevant and cumulative as well as confusing and prejudicial. The government exhibits to which Chesney objected were large photographs of Social Security cards, photo identification cards and other forms of identification seized in Chesney's apartment during his arrest. Because Chesney fails to make any showing that the exhibits' probative value was substantially outweighed by any prejudice to him, the district court did not abuse its discretion in striking the balance under Rule

---

**2.** Although in *Aguilar* we reviewed the district court's decision *in limine* to exclude evidence to support the defendant's necessity defense, the same *prima facie* showing is necessary to support a district court's grant of a necessity defense instruction.

403 of the Federal Rules of Evidence in favor of admitting the exhibits.

The convictions are AFFIRMED.