43 F.3d 1468
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
John G. BRIDGES, Defendant-Appellant.
 No. 94-5130.
 United States Court of Appeals, Fourth Circuit.
 Argued Nov. 4, 1994.
Decided Dec. 9, 1994.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. John R. Hargrove, Senior District Judge. (CR-93-195-HAR)
 Charles Gerald Bernstein, Bernstein & Sakellaris, Baltimore, Md., for appellant.
 Andrew Clayton White, Asst. U.S. Atty., Baltimore, Md., for appellee.
 On Brief: Therese Stadenmaier, Brown, Goldstein & Levy, Baltimore, Md., for appellant. Lynne A. Battaglia, U.S. Atty., Peter M. Semel, Asst. U.S. Atty., Jon Andrew Mellis, Law Student Intern, Baltimore, Md., for appellee.
 D.Md.
 AFFIRMED.
 Before MURNAGHAN, NIEMEYER, and MOTZ, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 John Bridges raises numerous challenges to his convictions and sentences for murder, kidnapping, robbery, use of a firearm, and transporting a stolen vehicle. We affirm.
 
 I.
 
 2
 The evidence adduced at trial showed that on February 18, 1992 Bridges and co-defendant Robert P. Gray abducted Jay Schuyler Alland at gunpoint in Laurel, Maryland, forced him into the back seat of his own car, and drove to the Beltsville Agricultural Research Center, a federal compound within the exclusive jurisdiction of the United States, where they ushered him out of the car and fatally shot him. Bridges and Gray absconded in Alland's car, taking with them Alland's wallet, briefcase, and computer, and ultimately sold the vehicle in Florida.
 
 
 3
 Gray pled guilty to one count of felony murder, and aiding and abetting in the same. After a jury trial, Bridges was convicted on all six counts of the indictment: one count of premeditated murder, and aiding and abetting in the same, for which he received life imprisonment; one count of felony murder, and aiding and abetting in the same, for which he received life imprisonment; one count of kidnapping, and aiding and abetting in the same, for which he received life imprisonment; one count of robbery, and aiding and abetting in the same, for which he received fifteen years imprisonment; and one count of transporting a stolen motor vehicle, and aiding and abetting in the same, for which he received ten years imprisonment, all such terms to run concurrently; and one count of using a firearm in relation to a crime of violence, and aiding and abetting in the same, for which he received sixty months imprisonment, such term to run consecutively. Bridges was sentenced on February 7, 1994, and this appeal followed.
 
 II.
 
 4
 Bridges' principal challenges are to the district court's jurisdiction over the robbery and kidnapping counts.
 
 A.
 
 5
 Bridges asserts that there was no federal jurisdiction over the robbery count because, he argues, the offense occurred entirely on state property.[1] It is well established that a court may determine, as a matter of law, "the existence of federal jurisdiction over the geographic area, but the locus of the offense within that area is an issue for the trier of fact." United States v. Warren, 984 F.2d 325, 327 (9th Cir.1993). The elements of the robbery charged here are set forth in 18 U.S.C. Sec. 2111:
 
 
 6
 Whoever, within the special maritime and territorial jurisdiction of the United States, by force and violence, or by intimidation, takes from the person or presence of another anything of value, shall be imprisoned not more than fifteen years.
 
 
 7
 Bridges' sole claim on this point is that the car was "taken from" Alland's "person or presence" in Laurel, Maryland where Bridges and Gray took the keys from Alland and forced him into the back seat, not on the federal reservation where they ushered Alland out of the car, shot him, and then drove away.
 
 
 8
 At the conclusion of the government's case, Bridges moved to dismiss the robbery count, arguing that "all of the elements of the crime were concluded off of a federal reservation" on state property. The district court denied the motion, ruling that there was sufficient evidence for a jury to find that the "robbery perhaps [was] begun" on state property but not concluded until "the car was completely in the hands of whoever was taking the car, which ultimately occurred on the government reservation." The district court specifically noted that it was not ruling that, as a matter of law, the jurors had to find that the robbery was committed on federal property but only that there was enough evidence such that "they could believe that the robbery was effectuated on the government reservation." In closing argument, both the government and defense counsel addressed the question of where the robbery took place. The court properly instructed the jury as to the elements of robbery and further instructed that in order to prove Bridges committed robbery "the government must prove beyond a reasonable doubt ... that the robbery occurred within" the jurisdiction of the United States, and that if the jury found that the robbery did not occur on federal property, or if it had "a reasonable doubt as to this element, then you must find the defendant not guilty of this charge."
 
 
 9
 As Bridges concedes, the dreadful facts as to the robbery are "not disputed." Alland was abducted at gunpoint by Bridges and Gray in Laurel, Maryland, forced into the back seat of his own car, driven to the federal reservation, and ushered out of the car, where he was shot and killed. Bridges and Gray then fled in Alland's car and ultimately sold the vehicle in Florida. From these facts, a rational trier of fact could easily find that the car was "taken from" Alland on federal property.[2]
 
 B.
 
 10
 Bridges' claim as to lack of jurisdiction over the kidnapping offense is based on an asserted defect in the indictment. An indictment that tracks the statutory language is ordinarily valid. United States v. Fogel, 901 F.2d 23, 25 (4th Cir.), cert. denied, 498 U.S. 939 (1990). In examining the sufficiency of an indictment, we have held that:
 
 
 11
 [t]he sufficiency of an indictment should be determined by practical, as distinguished from purely technical, considerations. Does it, under all the circumstances of the case, tell the defendant all that he needs to show for his defense, and does it so specify that with which he is charged that he will be in no danger of being a second time put in jeopardy? If it does so, it should be held good.
 
 
 12
 United States v. Matzkin, 14 F.3d 1014, 1019 (4th Cir.1994) (quoting United States v. Cobb, 905 F.2d 784, 790 (4th Cir.1990), cert. denied, 498 U.S. 1049 (1991)).[3] Where an indictment fails to allege an essential element of a crime, however, the charge must be dismissed. United States v. Hooker, 841 F.2d 1225, 1228 (4th Cir.1988) (en banc ).
 
 
 13
 The elements of kidnapping are set forth in 18 U.S.C. Sec. 1201(a)(2):
 
 
 14
 Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person ..., when--(2) any such act against the person is done within the special maritime and territorial jurisdiction of the United States....
 
 
 15
 Thus, there are two distinct elements involved: "the kidnapping victim shall have been (1) 'unlawfully seized, confined, inveigled, decoyed, kidnapped, abducted, or carried away by any means whatsoever' and (2) 'held for ransom or reward or otherwise.' " United States v. Lewis, 662 F.2d 1087, 1088 (4th Cir.1981), cert. denied, 455 U.S. 955 (1982) (quoting Chatwin v. United States, 326 U.S. 455, 459 (1946)).
 
 
 16
 Count Three of the indictment charging Bridges with kidnapping reads as follows:
 
 
 17
 On or about February 18, 1992, in the State and District of Maryland, on the grounds of the Beltsville Agricultural Research Center, an area within the special maritime and territorial jurisdiction of the United States, the defendant ... did knowingly, and unlawfully seize, confine, inveigle, kidnap, and abduct Jay Schuyler Alland for the purpose of stealing his automobile, killing him, and otherwise. 18 U.S.C. Sec. 1201(a)(2).
 
 
 18
 As the government concedes, the indictment fails to employ the term "hold." However, a fair and practical reading of the indictment demonstrates that the statutory element of "hold[ing] for ransom or reward or otherwise" was sufficiently incorporated in the indictment's allegation that Bridges "seize[d], confine[d], inveigle[d], kidnap[ped], and abduct[ed] [Alland] ... for the purpose of stealing his automobile, killing him, and otherwise." The indictment's qualification that the kidnapping was "for the purpose of stealing his automobile" strongly implies that Alland was being "[held] for ransom or reward or otherwise," and the indictment's failure to identify the "holding" as such is not fatal to its validity. See Lewis, 662 F.2d at 1088 (for purposes of 18 U.S.C. Sec. 1201(a)(1), element of holding implicit where indictment alleges even brief transportation of victim through interstate commerce) (citing Hall v. United States, 410 F.2d 653 (4th Cir.1969)). The indictment here adequately apprised Bridges of the charges against him and ensured that the Grand Jury had sufficiently considered all of the elements of kidnapping. See Hooker, 841 F.2d at 1230.
 
 
 19
 Accordingly, the district court properly exercised jurisdiction over the robbery and kidnapping offenses and so, of course, had proper jurisdiction over the felony murder count.[4]
 
 III.
 
 20
 Bridges' remaining contentions can be disposed of more quickly.
 
 A.
 
 21
 First, Bridges asserts that certain remarks made by the government's attorney in rebuttal argument deprived him of a fair trial. The test for whether these remarks amount to prosecutorial misconduct and hence constitute reversible error is whether they prejudicially affected the defendant's substantial rights so as to deprive him of a fair trial. United States v. Brockington, 849 F.2d 872, 875 (4th Cir.1988) (quoting United States v. Hernandez, 779 F.2d 456, 458 (8th Cir.1985)). During rebuttal argument, in response to defense counsel's closing argument criticizing the testimony of a government expert witness as favoring the government just because this is what "you might expect from a government agent," the Assistant United States Attorney observed that the defense could have hired its own expert but failed to do so because the burden of proof was not on the defendant. These challenged remarks were not an inappropriate response to defense counsel's implicit charges of governmental misconduct, especially where the government's attorney emphasized to the jury that the government maintained the burden of proof and that the defendant had no obligation to present any evidence. Accordingly, the prosecutor's remarks here did not so affect Bridges' substantial rights as to deprive him of a fair trial. See United States v. McNatt, 931 F.2d 251, 257 (4th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 879 (1992) (government's rebuttal that defendant refused permission to search his car constituted a proper response to defendant's charge of governmental misconduct). In any event, any error here was clearly harmless in light of the overwhelming evidence against Bridges on all counts. Id. at 258 (prosecutor's comments amounted to harmless error where evidence against defendant was substantial and corroborated); see also United States v. Curry, 993 F.2d 43, 46 (4th Cir.1993) (even if prosecutor's remarks during rebuttal were inappropriate and not in response to defense arguments, error was harmless where there was overwhelming evidence of guilt otherwise).
 
 B.
 
 22
 Bridges also challenges various jury instructions. Specifically, he claims that the district court erred in instructing: (1) that witnesses are ordinarily assumed to be truthful; (2) as to the relevance of false exculpatory statements; and (3) that Bridges could be found guilty of premeditated murder on an aiding and abetting theory. The decision by a district court to give or not to give a particular jury instruction is reviewed for abuse of discretion. United States v. Russell, 971 F.2d 1098, 1107 (4th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 1013 (1993).
 
 
 23
 An instruction that witnesses are assumed to be truthful is error and can, of course, be grounds for reversal, especially when, as here, the defense presents no witnesses. United States v. Varner, 748 F.2d 925, 927 (4th Cir.1984) (reversal required where government's case largely depended on eyewitness credibility and where implicit distinction in instructions made between government's testimony and that of the defendant).[5] However, taking the instructions as a whole, as we must, see United States v. Cobb, 905 F.2d 784, 788-89 (4th Cir.1990), cert. denied sub nom., United States v. Hatcher, 498 U.S. 1049 (1991), the error here was harmless in light of the multitude of instructions administered by the district court regarding witness credibility and inconsistencies generally and the credibility of expert, law enforcement, and accomplice witnesses specifically, and the voluminous evidence of Bridges' guilt. See United States v. Love, 767 F.2d 1052, 1060 (4th Cir.1985), cert. denied, 474 U.S. 1081 (1986) (instruction that a witness is presumed to tell the truth does not constitute plain error); United States v. Safley, 408 F.2d 603, 605 (4th Cir.), cert. denied, 395 U.S. 983 (1969) (same given totality of instructions); see also United States v. Hall, 854 F.2d 1036, 1041 (7th Cir.1988) ("In the context of the instructions as a whole, we find that the single phrase on the general assumption of a witness' truthfulness ... did not invade the jury's ability to judge the witnesses' credibility").
 
 
 24
 Nor did the district court abuse its discretion in refusing to limit its instruction regarding the relevance of false exculpatory statements. Such statements generally are admissible as probative of a defendant's guilty conscience. See, e.g., United States v. Cogdell, 844 F.2d 179, 181 (4th Cir.1988); United States v. McDougald, 650 F.2d 532, 533 (4th Cir.1981). The court specifically cautioned the jury not to rely solely on the statements here to establish Bridges' guilt. In any event, any error was once again harmless in light of the substantial evidence of Bridges' guilt on all counts.
 
 
 25
 Finally, the district court's instruction that Bridges could be found guilty of premeditated murder on an aiding and abetting theory similarly did not constitute an abuse of discretion where there was sufficient evidence adduced at trial for the jury to so find. United States v. Horton, 921 F.2d 540, 543 (4th Cir.1990), cert. denied, 501 U.S. 1234 (1991) (finding sufficient evidence to warrant aiding and abetting instruction); Wells v. Murray, 831 F.2d 468, 477 (4th Cir.1987) (requiring "foundation in the evidence" for instruction). Here, although the weight of the evidence indicated that Bridges was in fact the principal, there clearly was sufficient evidence for the jury to find Bridges guilty as an aider and abettor, i.e., witnesses testified about conversations in which Bridges identified Gray as the murderer, even though Bridges admitted being present at the time, and defense coun sel argued this theory to the jury, thereby justifying the court's instruction on that issue.[6]
 
 C.
 
 26
 Bridges contests the district court's denial of his motion for mistrial as a result of the unauthorized entry into the jury room of a food delivery person shortly after the jury had adjourned to begin deliberations, but before deliberations had begun. The trial judge is afforded broad discretion in decisions regarding extraneous influences on the jury. United States v. Gravely, 840 F.2d 1156, 1159 (4th Cir.1988). The standard for determining whether any prejudice resulted from the presence of extraneous matter or persons during the jury's deliberations is whether there is a "reasonable possibility that the jury's verdict was influenced by the material that improperly came before it." United States v. Seeright, 978 F.2d 842, 849-50 (4th Cir.1992) (quoting United States v. Barnes, 747 F.2d 246, 250 (4th Cir.1984)). Given the short period of time that the jurors were exposed to the delivery person, the complete absence of any communication between them, and the fact that the jury had not yet begun its deliberations, there was no reasonable possibility of undue influence here. See United States v. Olano, --- U.S. ----, ----, 113 S.Ct. 1770, 1779 (1993) (no specific or presumptive prejudice from presence of two alternative jurors in the jury room during deliberations). Accordingly, the district court did not abuse its discretion in denying Bridges' motion for mistrial.
 
 D.
 
 27
 Finally, Bridges challenges his sentences under the United States Sentencing Guidelines (Guidelines) on two grounds. First, Bridges contends that the district court erred in finding that a conviction for first degree murder under 18 U.S.C. Sec. 1111(a) necessitated a minimum mandatory sentence of life imprisonment without parole. Although this Court has not yet addressed this issue, other circuits have held that because 18 U.S.C. Sec. 1111(b) expressly mandates a life sentence,[7] a district court has no discretion under the Guidelines to depart from it. See, e.g., United States v. Sands, 968 F.2d 1058, 1066 (10th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 987 (1993); United States v. Lafleur, 952 F.2d 1537, 1543-46 (9th Cir.), modified and reh'g denied, 971 F.2d 200 (9th Cir.1991), cert. denied, --- U.S. ----, 113 S.Ct. 1292 (1993); United States v. Gonzalez, 922 F.2d 1044, 1048-51 (2d Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 660 (1991); United States v. Donley, 878 F.2d 735, 739-41 (3d Cir.1989), cert. denied, 494 U.S. 1058 (1990); see also U.S.S.G. Sec. 2A1.1, Appendix C, Amendment 476 (effective Nov. 1, 1993) (recognizing current trend of case law); U.S.S.G. Sec. 5G1.1(b) ("Where a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence"). We agree.
 
 
 28
 Second, Bridges asserts that the district court erred in not granting him a two-level downward departure for acceptance of responsibility and that the court should have honored his request for immunity so that he could present evidence with respect thereto. Pursuant to 18 U.S.C. Sec. 3553(e),[8] however, the district court had no discretion under the Guidelines to depart below the statutory minimum mandatory sentence for any reason other than substantial governmental assistance. See United States v. Peralta, 741 F.Supp. 1197, 1198-99 (D. Md.1990) (court had no authority to depart below mandatory minimum sentence because of the defendant's emotional state and extraordinary family circumstances), aff'd mem., 937 F.2d 604 (4th Cir.1991).[9] In any event, by going to trial and at least nominally contesting all counts of the indictment, Bridges failed to provide the court with any factual basis for such a departure, even if one were authorized. Accordingly, there was no error.
 
 IV.
 
 29
 In sum, we find no reversible error in Bridges' convictions or sentences for any of the crimes charged. Accordingly, these convictions and sentences are
 
 
 30
 AFFIRMED.
 
 
 
 [1]
 The robbery occurred in February, 1992, well before enactment of the federal carjacking statute, 18 U.S.C. Sec. 2119
 
 
 [2]
 Bridges' claim that the district court erred in excluding an asserted government "admission" on this point is meritless. The government's alibi demand notice stated that "[t]he United States contends that robbery and kidnapping of [Alland] occurred at approximately 2030 hours on February 18, 1992 behind the Sky Alland Research building in Laurel, Maryland ...." (emphasis added). Only a "clear and unambiguous admission of fact" made by a party's attorney is binding upon that party. United States v. Blood, 806 F.2d 1218, 1221 (4th Cir.1986). Here, the government consistently maintained that the robbery took place on federal property, and thus its pre-trial reference to the location of the robbery was at most "inadvertent," and so did not constitute a "clear and unambiguous admission." See id. at 1221 (government's inadvertent use of term "insurance" in opening statement and written proposed voir dire questions submitted to the court did not constitute clear and unambiguous admission of fact where government consistently maintained that prepaid legal services plans were employee welfare benefit plans under ERISA)
 
 
 [3]
 The government cites United States v. Chesney, 10 F.3d 641 (9th Cir.1994), for the proposition that where a challenge to an indictment is not made until after the close of the government's evidence, the indictment is entitled to a liberal construction in favor of validity. Id. at 643. However, we have specifically held that such a challenge is timely and entitled to the same standard of review as a challenge brought prior to trial. See United States v. Pupo, 841 F.2d 1235, 1239 (4th Cir.), cert. denied sub nom., Govantes v. United States, 488 U.S. 842 (1988) (only challenges brought post-verdict deserve deferential review)
 
 
 [4]
 With respect to felony murder, 18 U.S.C. Sec. 1111(a) provides that:
 Every murder ... committed in the perpetration of, or attempt to perpetrate, any arson, escape, murder, kidnapping, treason, espionage, sabotage, aggravated sexual abuse or sexual abuse, burglary, or robbery ... is murder in the first degree.
 Even if the district court had lacked proper jurisdiction over the robbery and kidnapping charges, its jurisdiction over the felony murder count would have been proper because there is no requirement that a defendant be indicted and convicted of an underlying felony in order to be convicted of felony murder. See United States v. Greene, 834 F.2d 1067, 1071 (D.C.Cir.1987), cert. denied, 487 U.S. 1238 (1988).
 
 
 [5]
 Indeed, the government conceded at oral argument that the district court's instruction here constituted error
 
 
 [6]
 At oral argument defense counsel raised for the first time the issue of jury unanimity, suggesting that the jury could have returned a verdict without unanimously agreeing on Bridges' status as a principal or an aider and abettor. The district court here gave a general unanimity instruction, however, and it is clear that the jury unanimously found Bridges to be, at a minimum, an active and knowing participant in the crime. Accordingly, the jury's verdict complied with the Sixth Amendment. See Horton, 921 F.2d at 545 ("Whether some jurors found [the defendant] guilty as a principal, believing that he delivered the fatal blow to the heart, while other jurors found him guilty as an aider and abettor, doubting exactly who delivered the fatal blow, is not controlling")
 
 
 [7]
 Section 1111(b) of Title 18 provides in pertinent part that a defendant convicted of first degree murder "shall ... be sentenced to imprisonment for life."
 
 
 [8]
 Section 3553(e) of Title 18 provides in pertinent part for "[l]imited authority to impose a sentence below a statutory minimum" (emphasis added):
 Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense.
 
 
 [9]
 In an unpublished opinion, United States v. Peralta, 1991 WL 117998 (4th Cir. July 3, 1991), we affirmed on an abuse of discretion standard the district court's alternate holdings that it had no authority to consider factors other than substantial assistance for purposes of a downward departure from a statutorily mandated minimum sentence and that, in any event, there was an insufficient factual basis for such a departure in that case