Racky RAMCHAIR, Petitioner,

v.

James CONWAY, Superintendent, Attica Correctional Facility, Respondent.

No. 04 CV 4241(JG).

United States District Court, E.D. New York.

April 4, 2008.

Frank Handelman, Esq., New York, NY, for Petitioner.

Andrew Cuomo, Attorney General, State of New York, by: Danielle Attias, Assistant Attorney General, New York, NY, for Respondent.

## MEMORANDUM AND ORDER

JOHN GLEESON, District Judge.

Racky Ramchair seeks habeas relief from his robbery convictions in state court. His petition has so far produced a decision of this Court, *Ramchair v. Conway (Ramchair I)*, 2005 WL 2786975 (E.D.N.Y. Oct. 25, 2005), and, indirectly, a decision of the New York Court of Appeals, *People v. Ramchair (Ramchair II)*, 8 N.Y.3d 313, 832 N.Y.S.2d 889, 864 N.E.2d 1288 (2007). Familiarity with those decisions is assumed. For the reasons set forth below, the petition is granted.

### A. *Ramchair's Unfair Trial*

There is no need to reiterate here all of the facts, as they are set forth in detail in *Ramchair I.* To summarize:

- Ramchair's robbery conviction rested on a vigorously disputed one-witness identification of him as one of two robbers.

- The victim, Olek, had only a limited opportunity to observe the two robbers. They spent almost all of the approximately 15 minutes at issue in the back of Olek's cab, at night, while he was driving. Though the second perpetrator—the one Olek described as a Guyanese Indian—climbed into the front seat after the first perpetrator wrapped his arm around Olek's head from behind and held a gun to his head, Olek promptly struggled free and exited the cab.

- The line-up was *seven weeks* later. Despite the time available to prepare a fair line-up, Ramchair was placed in one that was suggestive in the most aggravated way, i.e., Olek (himself Guyanese) had said the Guyanese Indian ethnicity of the second perpetrator was an "important characteristic," yet Ramchair was the only Guyanese Indian in the line-up.

- This unnecessary suggestiveness was aggravated by a bizarre "carbon rub;" carbon paper was used to smudge at least two of the fillers' faces so they'd look like they had facial hair. That technique, which would be laughable but for the risk it creates of incorrect identifications, is especially indefensible where there was so much time to

round up some fillers with real facial hair.

- Latimer, Ramchair's counsel at the line-up and later at each of his three trials, had good reasons not to object to the line-up at the time it was held despite its unfairness. New York law explicitly recognizes that such silence does *not* necessarily imply that counsel has no objections.
- It was crystal clear at each of the first two trials that the suggestive line-up, and the unreliable identification it produced, lay at the heart of the defense.
- The prosecutor pulled a dirty trick at the third trial. For the first time, she presented, as evidence against Ramchair, Latimer's presence at the line-up and his failure to object to it at the time. That surprise tactic made Latimer an essential witness to the central factual dispute in the case: whether or not Olek's identification of Ramchair as the Guyanese Indian perpetrator the result of a suggestive line-up.
- Not content with using Latimer's conduct as key evidence against Ramchair, the prosecutor capped off her case with outrageous and prejudicial accusations that Latimer was a racist. Though it was entirely appropriate for Latimer to contend that Ramchair was identified in the line-up only because he was the only Guyanese Indian in it, the prosecutor twisted that argument into accusations that Latimer believed "all black people look alike, all Hispanic people look alike. . . . That's what he is saying." She persisted in these egregious remarks, and in her claim that Latimer was racially "insulting" the jury, even though the trial court sustained objections to them.

■ I am mindful of the Supreme Court's observation in *Lutwak v. United States* that defendants are entitled only to fair trials, not perfect ones. 344 U.S. 604, 619, 73 S.Ct. 481, 97 L.Ed. 593 (1953). But Ramchair's trial was more than merely imperfect, it was fundamentally unfair. If a federal prosecutor fails to bring defense counsel's status as a potential witness to the trial court's attention prior to trial, and then by surprise converts that potential conflict at trial into an acute actual conflict, a new trial is ordered, and that prosecutor is admonished. *See United States v. Malpiedi*, 62 F.3d 465, 470 n. 3 (2d Cir.1995) ("We . . . trust that it will not take another decision [of this Court] to induce the government to bring any conflict to the district court's attention, rather than remaining silent in order to gain a tactical advantage from that conflict."). As discussed more fully in *Ramchair I*, 2005 WL 2786975 at *4, *13–*14, the opposite happened here: when the prosecutor blindsided Latimer at the third trial, the trial judge blamed Latimer, not the prosecutor. On appeal, the Appellate Division did the same. *People v. Ramchair*, 308 A.D.2d 601, 764 N.Y.S.2d 725, 725 (2d Dep't 2003) (Latimer "never requested to withdraw as the defendant's attorney so that he could be the defendant's witness").

## B. *Ineffective Assistance of Appellate Counsel*

■ After an unexplained five-year delay, Ramchair's appellate counsel filed a brief that raised the wrong argument in response to the prosecutor's dirty trick. Counsel argued that it was error to preclude Latimer from testifying on behalf of his client at trial. But since the advocate-witness rule prohibits a lawyer from being both an advocate and a witness on a significant issue in the same jury trial, *see Ramchair I*, 2005 WL 2786975, at *14, it was not error to keep Latimer off the witness stand. The error was the denial of his

alternative motion for a mistrial. *Id.* The failure to raise *that* claim on appeal constituted ineffective assistance of appellate counsel. *Id.* at *16. I held Ramchair's petition in abeyance to allow him to exhaust that claim.

### C. *The New York Court of Appeals' Decision*

■ The New York Court of Appeals found that Ramchair had not been denied the effective assistance of appellate counsel.[1] After observing that appellate lawyers have discretion to determine which arguments should be made on appeal and how to order those arguments, it held as follows:

> Here, appellate counsel submitted a comprehensive brief to the Appellate Division raising two strong claims on defendant's behalf. Indeed, had the first claim raised by appellate counsel relating to defendant's double jeopardy rights been successful, defendant would have been entitled to the dismissal of the indictment. Nevertheless, defendant now argues that appellate counsel should have argued the additional claim that the court erred in denying his motion for a mistrial. The substantive grounds upon which that motion was based, however, were noted by counsel in the second claim raised in the appellate brief filed on behalf of the defendant. Counsel chronicled the facts that formed the basis of the claimed error in the context of the objections made by defense counsel and the court's ruling in response thereto.
>
> We recognize that the underlying issue concerning the admissibility of proof relating to defense counsel's presence at the line-up has never been addressed by this court or the United States Supreme Court, and this case does not provide us with an occasion to do so. Because the issue before us is solely whether appellate counsel was effective, we cannot and do not reach the merits of any issue that could or might have been raised on the original appeal. However, viewing the issue from the perspective of appellate counsel, we note that there is Appellate Division authority suggesting that such evidence is sometimes admissible (*see e.g. People v. Foulks,* 143 A.D.2d 1038 [533 N.Y.S.2d 619] [2d Dep't 1988]; *People v. Valentine,* 271 A.D.2d 245 [706 N.Y.S.2d 331] [1st Dep't 2000] ). Under the circumstances, appellate counsel might have determined as a matter of reasonable appellate strategy that there was a greater likelihood of success pursuing the right to present a defense argument, rather than focusing on the mistrial application. The fact that the specific motion for a mistrial was not *highlighted and argued in greater detail does not,* on this record, amount to ineffective assistance of appellate counsel as a matter of law. Therefore, because we cannot say from this record that there was no solid legal basis for appellate counsel's strategy, we conclude that the Appellate Division did not err in denying defendant's petition for a writ of error coram nobis.

*Ramchair II,* 8 N.Y.3d at 316–17, 832 N.Y.S.2d 889, 864 N.E.2d 1288 (emphasis added).

### D. *Discussion*

■ The unanimous opinion of the New York Court of Appeals that Ramchair was not denied the effective assistance of

---

1. Ramchair of course first brought his application for *coram nobis* relief in the Appellate Division, Second Department. That court issued a terse order declaring without discussion that there had been no ineffective assistance of appellate counsel. *People v. Ramchair,* 27 A.D.3d 668, 810 N.Y.S.2d 685 (2d Dep't 2006)

appellate counsel is obviously a significant impediment to his effort to obtain habeas relief on that ground. Such relief is available only if that decision constituted an "unreasonable application" of clearly established Supreme Court law. 28 U.S.C. § 2254(d)(1). A state court decision fits that description if it "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). "In other words, a federal court may grant relief when a state court has misapplied a 'governing legal principle' to 'a set of facts different from those of the case in which the principle was announced.'" *Wiggins v. Smith*, 539 U.S. 510, 520, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 76, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003)); *see also Davis v. Strack*, 270 F.3d 111, 133 (2d Cir.2001) (failure to charge justification defense, in light of evidence at trial, constituted unreasonable application of Due Process Clause).

■ "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir.2001) (citing *Williams*, 529 U.S. at 411, 120 S.Ct. 1495); *see also Yarborough v. Gentry*, 540 U.S. 1, 5, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003) ("Where ... the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable."); *Wiggins*, 539 U.S. at 520–21, 123 S.Ct. 2527. At what point does a state court's erroneous application of federal law also constitute an "unreasonable" one? "The search for the

'increment of error' that renders a state court's rejection of a constitutional claim unreasonable and hence remediable via habeas corpus is an elusive task." *Christie v. Hollins*, 409 F.3d 120 126 (2d Cir.2005) (finding such error and granting writ based on exclusion of prior testimony of unavailable witness); *see also Henry v. Poole*, 409 F.3d 48, 71 (2d Cir.2005) (granting writ on ground that state court's rejection of ineffective assistance claim was an "objectively unreasonable application" of *Strickland* test). The Second Circuit has stated that "[s]ome increment of incorrectness beyond error is required [, but it] need not be great; otherwise, habeas relief would be limited to state courts decisions so far off the mark as to suggest judicial incompetence." *Gilchrist*, 260 F.3d at 93 (citing *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir.2000)). Supreme Court decisions suggest a more stringent standard. Addressing the identical language in § 2254(d)(2), which relates to state court findings of fact, the Supreme Court described unreasonableness as "a substantially higher threshold" than mere incorrectness. *Schriro v. Landrigan*, 550 U.S. 465, 127 S.Ct. 1933, 1940, 167 L.Ed.2d 836 (2007). I conclude that Ramchair has made such a showing here.

One aspect of the Court of Appeals' reasoning simply misapprehends Ramchair's argument. The Court observed that, "viewing the [mistrial] issue from the perspective of appellate counsel," there was authority suggesting that the presence of counsel at a lineup, together with the absence of objection by that counsel, is admissible. *Ramchair II*, 8 N.Y.3d at 317, 832 N.Y.S.2d 889, 864 N.E.2d 1288 (citing *People v. Foulks*, 143 A.D.2d 1038, 533 N.Y.S.2d 619 (2d Dep't 1988); *People v. Valentine*, 271 A.D.2d 245, 706 N.Y.S.2d 331 (1st Dep't 2000). Thus, the court reasoned, appellate counsel might have concluded that the better strategy was to

contend that trial counsel should have been allowed to testify, "rather than focusing on the mistrial application." *Id.* But Ramchair doesn't challenge the *admissibility* of trial counsel's presence (and silence) at the lineup. His argument assumes the admissibility of those facts, and focuses instead on the *consequences* of admission *where lineup counsel and trial counsel are the same person.*[2] Neither *Foulks* nor *Valentine* has the slightest bearing on that issue.

The Court of Appeals further relied on (a) the familiar principle that the Sixth Amendment does not require appellate counsel to raise every conceivable claim; and (b) the fact that the "substantive grounds" for the omitted claim were before the Appellate Division.

I respectfully find the former principle inapplicable here. This is not a case in which appellate counsel, faced with an array of potential points on appeal, strategically elected not to pursue "an additional claim," as the Court of Appeals put it. *Ramchair II,* 8 N.Y.3d at 316, 832 N.Y.S.2d 889, 864 N.E.2d 1288. Appellate counsel *actually made* the claim that Ramchair's due process rights were violated by the prosecutor's use of Latimer's conduct at the line-up as evidence against Ramchair. It was the second of only two points on appeal. The claim of ineffectiveness is the failure to challenge the denial of the proper *relief* for that due process

violation—a mistrial. I know courts must indulge a strong presumption that the conduct underlying an ineffective assistance claim was reasonable, and the result of strategy rather than error. *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).[3] But I cannot conceive of a strategy that would explain the failure to request the proper relief. Appellate counsel had thoroughly briefed all the circumstances that made Latimer a witness and denied Ramchair due process. He contended that if the prosecutor was planning to rely on Latimer's silence at the line-up as evidence that the line-up was fair, Ramchair was entitled to Latimer's testimony to rebut that inference and prove the line-up was unfair. Appellate counsel then argued, unpersuasively, that Latimer should have been allowed by the trial court to become a key witness in the same trial in which he was defense counsel. The failure to add, "in the alternative, Ramchair's motion for a mistrial should have been granted so Latimer could be available at a retrial" was not a strategy akin to selecting which points to advance and how to order them. It was just a mistake. *See Jackson v. Leonardo,* 162 F.3d 81, 85 (2d Cir.1998) (granting habeas relief where omitted argument could not possibly have interfered with other available arguments; appellate counsel most likely overlooked it). Busy appellate practitioners, even good ones, make mistakes. And since a reasonable

---

**2.** *See, e.g., United States v. Peng,* 766 F.2d 82, 86 (2d Cir.1985) ("[T]he question of who opened the door to testimony about [a meeting between a government witness and defense counsel] is not as important to our analysis as the consequences of that testimony.")

**3.** The New York courts did not apply the *Strickland* test; rather, the Court of Appeals determined only that Ramchair's appellate representation satisfied the "meaningful representation" criterion set forth in *People v.*

*Baldi,* 54 N.Y.2d 137, 147, 444 N.Y.S.2d 893, 429 N.E.2d 400 (1981). *See Ramchair II,* 8 N.Y.3d at 316–17, 832 N.Y.S.2d 889, 864 N.E.2d 1288. Though that test is different from the federal one, I understand the Second Circuit to have precluded any holding that its application can result in a decision that is contrary to clearly established federal law for purposes of habeas relief under 28 U.S.C. § 2254(d)(1). *See Eze v. Senkowski,* 321 F.3d 110, 124 (2d Cir.2003).

 

appellate court would have granted the relief counsel failed to request, it is not a mistake Ramchair ought to have paid for. It constituted ineffective assistance of appellate counsel.

Finally, the significance of the Court of Appeals' observation that "[t]he fact that the specific motion for a mistrial was *not highlighted and argued in greater detail* does not, on this record, amount to ineffective assistance of appellate counsel as a matter of law," *Ramchair II,* 8 N.Y.3d at 317, 832 N.Y.S.2d 889, 864 N.E.2d 1288 (emphasis added), is not entirely clear. It suggests to me a view that Ramchair's appellate counsel came close enough to getting it right so as to extinguish an ineffective assistance claim. I note first that the court's observation overstates what Ramchair's appellate counsel did. I have reviewed the brief to the Appellate Division. There is no unhighlighted or undetailed argument that a mistrial should have been granted. That argument was not made; that relief was not sought. Second, the Court of Appeals' suggestion understates what is required by New York law. Setting forth the "substantive grounds" for particular relief is not the same as asking for it. If Ramchair's counsel had not asked for a mistrial in the trial court, but then claimed in the Appellate Division that a mistrial should have been granted, there is no doubt that court would have deemed that claim procedurally defaulted. Similarly, appellate counsel's failure to complain about the denial of the mistrial motion in the appellate court defaulted that claim. The Court of Appeals' suggestion that the Appellate Division, generally or in this case, nevertheless evaluates all unmade arguments for which the record before it provides "substantive grounds" does not comport with how that court or any other actually reviews claims. It is not a fair answer to Ramchair's con-

tention that his appellate counsel blundered.

E. *Conclusion*

The petition is granted. Respondent is directed to release Ramchair within 45 days of this order unless the state declares its intention, within those 45 days, to retry Ramchair on the charges against him.

So ordered.