08-2004-pr
Ramchair v. Conway

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2008

(Argued: June 4, 2009; Remanded: June 30, 2009; Resubmitted to Panel: February 12, 2010; Decided: April 2, 2010)

Docket No. 08-2004-pr

-------------------------------------

RACKY RAMCHAIR,

Petitioner-Appellee,

- v -

JAMES CONWAY, SUPERINTENDENT, ATTICA CORRECTIONAL FACILITY,

Respondent-Appellant.

-------------------------------------

Before:   WINTER, CALABRESI, and SACK, Circuit Judges.

Appeal from a judgment of the United States District Court for the Eastern District of New York (John Gleeson, Judge) granting a writ of habeas corpus to the petitioner on the grounds of ineffective assistance of state appellate counsel, and ordering a new trial.  Pursuant to a Jacobson remand, the district court solicited testimony from appellate counsel, which supported the court's finding of ineffectiveness, and clarified its decision to order a new trial rather than a new state-court appeal.

Affirmed.

FRANK HANDELMAN, Law Office of Frank Handelman, New York, NY, for Appellee.

ROSEANN B. MACKECHNIE, Deputy Solicitor General for Criminal Matters, for Andrew M. Cuomo, Attorney General, New York, NY, for Appellant.

Sack, Circuit Judge:

This case has returned to us following a remand to the United States District Court for the Eastern District of New York (John Gleeson, Judge) pursuant to United States v. Jacobson, 15 F.3d 19, 21-22 (2d Cir. 1994). We sought from the district court additional findings of fact and conclusions of law supporting its order granting Petitioner-Appellee Racky Ramchair's petition for a writ of habeas corpus under 28 U.S.C. § 2254, and a clarification of its decision to grant Ramchair a new trial, rather than a new appeal. Ramchair v. Conway, 335 F. App'x 122, 124 (2d Cir. 2009) (summary order) ("Ramchair III").

At trial, Ramchair's counsel had moved for a mistrial after the prosecutor elicited testimony that counsel had been present at the lineup procedure during which Ramchair was identified as the perpetrator of the crime with which he was charged, but that counsel had not objected to the lineup. Before moving for a mistrial, trial counsel had requested and been denied permission to testify in rebuttal to the testimony by way of explanation as to why he may not have objected. The motion for a mistrial was denied, and Ramchair was ultimately convicted of first- and second-degree robbery. The district court concluded that Ramchair had been denied effective assistance of

2

appellate counsel because appellate counsel had failed to claim on appeal that the trial court had erred in denying Ramchair's motion for a mistrial.

Respondent-Appellant James Conway, Superintendent of Attica Correctional Facility (the "State"), appealed from the grant of the writ and the grant of a new trial. We remanded for the district court to solicit evidence from appellate counsel as to her decision not to raise the mistrial claim, and for the district court to set forth its reasons for granting a new trial rather than a new appeal.

After holding an evidentiary hearing at which appellate counsel testified, the district court issued an order clarifying its grant of the writ and its grant of a new trial.

In light of the testimony elicited at the hearing, we conclude that the district court's decision to grant the writ was correct. Appellate counsel's failure to raise the mistrial claim was not a sound strategic decision, but a mistake based on counsel's misunderstanding that the mistrial claim, which trial counsel explicitly made, had not been preserved. We agree with the district court that this mistake rose to the level of constitutional ineffectiveness, and that the New York Court of Appeals' decision to the contrary was an unreasonable application of clearly established Supreme Court precedent. We also conclude, in light of the reasons provided by the district court, that its choice of remedy -- a new trial -- was not an abuse of discretion.

3

We therefore affirm.

**BACKGROUND**

The facts of this case, largely undisputed, have been set forth accurately and in painstaking detail by the district court in its first opinion in this case.[1]  See Ramchair v. Conway, No. 04 Civ. 4241, 2005 WL 2786975, 2005 U.S. Dist. LEXIS 25852 (E.D.N.Y. Oct. 26, 2005) ("Ramchair I"); see also Ramchair v. Conway, 671 F. Supp. 2d 365 (E.D.N.Y. 2008) ("Ramchair II"); Ramchair v. Conway, 671 F. Supp. 2d 371 (E.D.N.Y. 2009) ("Ramchair IV").  We rehearse them here only insofar as we think it necessary to explain our resolution of this appeal.

Facts and Procedural History

In June 1995, Ramchair was charged with the robbery of a cabdriver in Queens after being identified by the victim in a lineup approximately seven weeks after the robbery.  The victim had told the police that one of the two robbers was Guyanese Indian, which is, indeed, Ramchair's ethnicity.  Of the six people in the lineup, at least four were not Guyanese, and at least two, unlike Ramchair, had no facial hair.[2]  Ramchair's appointed defense counsel, Jonathan T. Latimer, III, was present at the lineup.

Ramchair later moved to suppress the identification on the ground that the lineup was unduly suggestive.  Detective

---

[1]  That opinion is not reported in the Federal Supplement.

[2]  The police provided carbon paper for those without facial hair to rub on their faces.

4

Robert Winnik, the police officer who was present at the lineup, testified to its circumstances, including the presence of an attorney -- Latimer -- for Ramchair. At the hearing on the motion, the prosecutor did not elicit information about Latimer's conduct during the lineup. The motion to suppress was denied and the case proceeded to trial in Supreme Court, Queens County.

During his first trial, Ramchair was assaulted in jail. The court therefore declared a mistrial.

Ramchair's second trial revolved around the disputed lineup identification. It also ended in a mistrial, over defense objection, when one of the jurors was hospitalized during deliberations. During the trial, the prosecutor had not sought to elicit testimony regarding Latimer's conduct during the lineup. Indeed, Detective Winnik testified that he could not recall who represented Ramchair at the lineup.

At Ramchair's third trial, defense counsel Latimer again disputed the fairness of the lineup. For the first time, Winnik identified Latimer as having been present at the lineup. The prosecution then sought to elicit testimony from the detective about whether Latimer had objected to the lineup at the time. Latimer objected, arguing that the prosecution was making him a witness. The court overruled the objection and Winnik testified that Latimer, although present, had not objected to the lineup.[3]

---

[3] Latimer cannot recall whether he voiced objections at the lineup.

Latimer then requested permission to testify in rebuttal to Winnik's testimony, arguing that the prosecution's examination had improperly made him a witness against his own client. The court denied the request, reasoning that Latimer should have known in advance that he wished to testify to the improprieties of the lineup, and thus should have withdrawn from representing Ramchair before trial. Latimer attempted to explain that he had not planned to testify to any such improprieties, but now thought it necessary to rebut the implication that he had, by his asserted silence at the time, conceded that the lineup was fair. The trial court again denied the request, instructing Latimer that his views about the lineup were not relevant and that in any event, there had been no testimony as to his views of its fairness.

After Winnik's testimony, Latimer moved for a mistrial:

> I have a motion for a mistrial. I think it
> is completely improper to allow the
> prosecution to imply through their
> questioning of this witness that I somehow
> condoned the line-up and contend that is fair
> and then not allow me to testify myself or to
> put on that information in the contrary with
> respect to that issue.

Ramchair I, 2005 WL 2786975 at *6, 2005 U.S. Dist. LEXIS 25852 at *15-*16. The motion was denied. The prosecutor then explicitly relied upon Winnik's testimony as to Latimer's conduct at the lineup in her summation.

6

Ramchair was convicted and sentenced to concurrent terms of imprisonment of 10 to 20 years on the first-degree conviction and 5 to 10 years on the second-degree conviction.

Ramchair appealed. He was represented by new counsel on appeal. Eventually -- it took five years for Ramchair's lawyers to perfect Ramchair's appeal -- appellate counsel raised two grounds for reversal.

First, counsel argued that Ramchair's third trial violated his right not to be placed in double jeopardy. The New York Supreme Court, Appellate Division, Second Department, rejected this argument because, in its view, the declaration of a mistrial in Ramchair's second trial had become "manifestly necessary" when one of the jurors had been hospitalized during deliberations, after the alternate jurors had been dismissed. People v. Ramchair, 308 A.D.2d 601, 602, 764 N.Y.S.2d 725, 726 (2d Dep't 2003).

Second, appellate counsel argued that Ramchair's constitutional right to present a defense was violated by the trial court's denial of Latimer's request to testify. The court rejected this argument too, citing the provision of the New York Code of Professional Responsibility, and related cases, prohibiting an advocate from acting as a witness on a significant issue of fact, subject to limited exceptions. The court reasoned that "since the defense counsel never requested to withdraw as the defendant's attorney so that he could be the defendant's witness," the trial court did not err in denying defense counsel

7

permission to testify, because allowing him to testify would turn him into an advocate-witness. Id., 308 A.D.2d at 602, 764 N.Y.S.2d at 726-27. Appellate counsel did not, however, raise before the Appellate Division the issue of the trial court's refusal to grant a mistrial upon Ramchair's trial counsel's motion seeking one.

After leave to appeal to the Court of Appeals was denied, Ramchair filed, pro se, for habeas relief in the United States District Court for the Eastern District of New York (John Gleeson, Judge), raising the same claims that were rejected on direct appeal. The district court concluded that while those claims did not warrant habeas relief, a claim of ineffective assistance of appellate counsel raised by court-appointed habeas counsel might have been meritorious. Ramchair I, 2005 WL 2786975 at *16, 2005 U.S. Dist. LEXIS 25852 at *50-*51. It therefore held Ramchair's petition in abeyance pending the exhaustion of that claim in state court. Id., 2005 WL 2786975 at *18, 2005 U.S. Dist. LEXIS 25852 at *54.

Ramchair then sought to exhaust by filing a petition for a writ of error coram nobis with the Appellate Division, arguing that appellate counsel had been ineffective for failing to raise the claim that the trial court had erred in denying defense counsel's motion for a mistrial. The Appellate Division denied the application without comment, see People v. Ramchair, 27 A.D.3d 668, 810 N.Y.S.2d 685 (2d Dep't 2006), and the Court of Appeals affirmed, People v. Ramchair, 8 N.Y.3d 313, 316, 864

8

N.E.2d 1288, 1290 (2007). The Court of Appeals reasoned that appellate counsel's brief to the Appellate Division had been "comprehensive," and the arguments raised therein "strong." Id. The court concluded that "appellate counsel might have determined as a matter of reasonable appellate strategy that there was a greater likelihood of success pursuing the right to present a defense argument, rather than focusing on the mistrial application." Id., 8 N.Y.3d at 317, 864 N.E.2d at 1291. The court" [could] not say from this record that there was no solid legal basis for appellate counsel's strategy." Id.

After the district court resumed and completed its consideration of Ramchair's habeas petition, the court granted it. Ramchair II, 671 F. Supp. 2d at 371. The court concluded that Ramchair's trial had been unfair because the prosecution's "surprise tactic made Latimer an essential witness to the central factual dispute in the case: whether or not [the victim's] identification of Ramchair as the Guyanese Indian perpetrator [was] the result of a suggestive line-up." Id. at 367. The court was of the view that appellate counsel had correctly identified the unfairness, but had sought relief -- allowing Latimer to testify at trial -- that had minimal support in the law, while failing to argue for a mistrial, which "a reasonable appellate court would have granted" and which would have allowed Latimer to testify at a new trial, after Ramchair had obtained new counsel. Id. at 370-71. The district court determined that appellate counsel's failure to raise the mistrial claim was

9

constitutionally ineffective, and the Court of Appeals' conclusion to the contrary was unreasonable, because there was no "conceiv[able] . . . strategy that would explain the failure to request the proper relief." Id. at 370. The court directed the State to release Ramchair within 45 days or declare its intention within that time to retry him.

The State appealed from the grant of the writ and the grant of a new trial. We remanded under the procedures originally set forth in Jacobson, 15 F.3d at 21-22, under which a case is returned to the district court for it to address specific issues and then returned to the same panel of this Court for disposition of the appeal. Ramchair III, 335 F. App'x at 124. We instructed the district court to conduct an evidentiary hearing to solicit testimony from appellate counsel as to whether there was a strategic reason for not raising the mistrial claim, and to set forth its reasons for awarding a new trial rather than a new state-court appeal. Id.

On remand, the district court conducted an evidentiary hearing. Appellate counsel testified that she did not think that Latimer's motion for a mistrial preserved a claim that a mistrial should have been granted for the purpose of enabling new counsel to be appointed for Ramchair, thereby allowing Latimer to testify about the lineup. Appellate counsel was under the mistaken impression that the mistrial motion only preserved the claim that the trial court erred in denying Latimer's request to testify at the third trial. Evidentiary Hr'g Tr. 24, 46 (Sept. 30, 2009),

10

appended to Appellant's Ltr. Br. (Jan. 22, 2010) ("Tr. _").  She reasoned that the mistrial motion "was not framed as so [Latimer] can be relieved as counsel and be available to testify at another trial."  Tr. 25.  She also reasoned that Latimer would not have wanted a new trial because a fourth trial "would . . . [not be] in the interest of judicial economy."  Tr. 23.  She further testified that she considered the mistrial claim, had it been preserved, and the claim that the trial court erred in refusing Latimer permission to testify at the third trial, to be equally strong arguments each of which could only succeed if the Appellate Division "agree[d] with the issue that the [trial] court erred in not allowing counsel to testify."  Tr. 25.

Following the hearing, the district court issued an order reaffirming and clarifying its grant of habeas relief and a new trial.  Ramchair IV, 671 F. Supp. 2d 371.  The court concluded that appellate counsel's failure to raise the mistrial claim was not the product of sound strategy, but a mistake that rose to the level of constitutional ineffectiveness, and that the New York Court of Appeals had applied Supreme Court precedent unreasonably in deciding otherwise.  Id.

In explaining its decision to grant a new trial rather than a new appeal in state court, the court pointed out the exceptionally long delay that Ramchair has endured -- more than twelve and one-half years -- since his conviction, during which time he has been incarcerated, without having the issue of the constitutional propriety of his conviction finally determined.

11

*Id.* at 384-85. It also noted that the New York Court of Appeals had already expressed a "dim view" of the mistrial claim in its denial of Ramchair's application for a writ of error *coram nobis*, but that it thought the argument that he was due a new trial was "unassailable." *Id.* at 384.

The case has now been returned to this panel pursuant to *Jacobson*.

**DISCUSSION**

I. Standard of Review

"We review a district court's grant or denial of habeas corpus *de novo*, and the underlying findings of fact for clear error." *Rubin v. Garvin*, 544 F.3d 461, 467 (2d Cir. 2008). "We review the district court's choice of [a habeas] remedy . . . for an abuse of discretion." *United States v. Gordon*, 156 F.3d 376, 381 (2d Cir. 1998) (28 U.S.C. § 2255 petition); *accord Douglas v. Workman*, 560 F.3d 1156, 1176 (10th Cir. 2009) (per curiam) (section 2254 petition).

II. Analysis

A. Standard for Habeas Relief Based on Ineffective Assistance of Counsel

"Under the deferential standard of review established by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), where the petitioner's claim 'was adjudicated on the merits in State court proceedings,' as here, we may only grant habeas relief if the state court's adjudication 'was contrary to, or involved an unreasonable application of, clearly established

12

Federal law as determined by the Supreme Court of the United States,' or 'was based upon an unreasonable determination of the facts in light of the evidence presented.'" Palacios v. Burge, 589 F.3d 556, 561 (2d Cir. 2009) (quoting 28 U.S.C. § 2254(d)).

"We have held that in light of Strickland v. Washington, 466 U.S. 668[ ] (1984), a Sixth Amendment ineffective assistance of counsel claim necessarily invokes federal law that has been 'clearly established' by the Supreme Court within the meaning of AEDPA." Mosby v. Senkowski, 470 F.3d 515, 518-19 (2d Cir. 2006) (internal quotation marks omitted). "[T]o establish ineffective assistance of appellate counsel, [petitioner] must show that 'counsel's representation fell below an objective standard of reasonableness,' and that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Forbes v. United States, 574 F.3d 101, 106 (2d Cir. 2009) (per curiam) (quoting Strickland, 466 U.S. at 688, 694).

> In attempting to demonstrate that appellate counsel's failure to raise a state claim constitutes deficient performance, it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made. However, a petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker.

Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) (internal citation omitted).

13

B. Ramchair Was Denied a Fair Trial

"The right to a fair trial[] [is] guaranteed to state criminal defendants by the Due Process Clause of the Fourteenth Amendment . . . ." Cone v. Bell, 129 S. Ct. 1769, 1772 (2009). While "[t]he Constitution guarantees a fair trial through the Due Process Clauses, . . . it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment." United States v. Gonzalez-Lopez, 548 U.S. 140, 146 (2006) (internal quotation marks omitted). "The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations. The rights to confront and cross-examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due process." Chambers v. Mississippi, 410 U.S. 284, 294 (1973). "Few rights are more fundamental than that of an accused to present witnesses in his own defense." Id. at 302.

Ramchair was denied the opportunity to present a crucial witness in his own defense in connection with the central issue in his case -- the fairness of the lineup which was the sole basis for his identification as the perpetrator of the crime with which he was charged. The need for that witness's testimony did not arise until, in the third trial but for the first time, the prosecutor elicited testimony from Detective Winnik to the effect that trial defense counsel, Latimer, who was present at

14

the lineup, did not object to it at the time. The clear implication was that Latimer conceded that the lineup was fair. Because the trial court did not grant a new trial at which Latimer could rebut this testimony as a witness, rather than serve as defense counsel, Ramchair was deprived of the right to present a witness essential to his case.[4]

The state trial court's insistence that the testimony had not implicated Latimer's opinion was mistaken -- that was the plain purpose and likely effect of the testimony. The trial court's statement that Latimer's opinion of the fairness of the lineup was not relevant was also mistaken: The jury could reasonably infer that if the counsel for the defendant thought the lineup was fair, it must have been. Ramchair's right to a fair trial required that he have the opportunity to rebut the detective's testimony by presenting his own witnesses as to Latimer's opinion of the fairness of the lineup. The only such witness was Latimer himself.

Because the prosecution elicited the testimony at issue for the first time at Ramchair's third trial, the trial court was mistaken when it faulted defense counsel for not anticipating the need to testify before that trial began and withdrawing in favor of alternative counsel. Indeed, we think it was likely incumbent upon the prosecutor under these circumstances to inform the court

---

[4] As explained below, it was not feasible under the New York Code of Professional Responsibility for Latimer to testify at the third trial, because he was acting as Ramchair's lawyer.

15

of its plan to elicit the testimony at issue, because the prosecutor had to know that it would likely create a conflict between defense counsel and his client. Cf. United States v. Malpiedi, 62 F.3d 465, 470 n.3 (2d Cir. 1995) ("We . . . trust that it will not take another decision to induce the government to bring any conflict of interest to the district court's attention, rather than remaining silent in order to gain a tactical advantage from that conflict.").

Ramchair was thus deprived of his right to a fair trial.

C. Appellate Counsel Was Constitutionally Ineffective

Latimer sought to vindicate his client's fair trial right by moving for a mistrial at the conclusion of Detective Winnik's testimony. The motion was denied. When the matter was taken by appellate counsel, she grasped the unfairness of the trial, but did not seem to understand that under the circumstances, the grant of that mistrial motion was constitutionally mandatory. She argued that Latimer's request to testify at the third trial, not his motion for a fourth one, should have been granted.[5]

The argument pursued by appellate counsel had minimal chance of success. "It is well established that once representation is undertaken, a lawyer must withdraw as advocate if it appears that he must testify on behalf of his own client."

_____

[5] Appellate counsel also made a colorable but ultimately meritless claim under the Double Jeopardy Clause. Tr. 18.

16

People v. Rivera, 172 A.D.2d 633, 568 N.Y.S.2d 435 (2d Dep't 1991); see also People v. Paperno, 54 N.Y.2d 294, 299-300, 429 N.E.2d 797, 800 (1981) ("The advocate-witness rule . . . generally requires the lawyer to withdraw from employment when it appears that he . . . will be called to testify regarding a disputed issue of fact.") (internal citations omitted). The "advocate-witness" rule was codified in Disciplinary Rule ("DR") 5-102(A) of the New York Code of Professional Responsibility effective at the time of Ramchair's appeal.[6] DR 5-102(A) provided, at the time of Ramchair's third trial:

> If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that the lawyer ought to be called as a witness on behalf of the client, the lawyer shall withdraw as an advocate before the tribunal, except that the lawyer may continue as an advocate and may testify in the circumstances enumerated in DR 5-101(B)(1) through (4).

22 N.Y.C.R.R. § 1200.21 (1996).

> The exceptions listed in DR 5-101(B) were as follows:

> 1. If the testimony will relate solely to an uncontested issue.

> 2. If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.

> 3. If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or the lawyer's firm to the client.

---

[6] The rule is now codified in Rule 3.7(a) of the New York Rules of Professional Conduct, which is substantially the same as DR 5-102(A). See, e.g., Gabayzadeh v. Taylor, 639 F. Supp. 2d 298, 303 (E.D.N.Y. 2009) (differences "largely stylistic").

17

4. As to any matter, if disqualification as an advocate would work a substantial hardship on the client because of the distinctive value of the lawyer as counsel in the particular case.

Id. § 1200.20 (1996). There is no indication that replacing Latimer would have worked a substantial hardship on Ramchair, and counsel did not argue to the Appellate Division that any of the other specified exceptions applied -- nor do they appear to.[7]

Latimer's request to testify while continuing to act as an advocate, the denial of which was the basis for this argument on appeal by counsel, ran directly contrary to the advocate-witness rule. Appellate counsel testified in the district court that she raised the request because she thought it fell within "the exception" to the advocate-witness rule. Tr. 23. "[T]he case law . . . noted that [the requested testimony] might be allowed in those instances where counsel was the only person who

---

[7] Appellate counsel testified at the evidentiary hearing that she "thought that . . . Mr. Latimer was primarily arguing for this because this was actually the defendant's third trial. It seemed like it would be a hardship on everybody, and [not] in the interest of judicial economy to have yet another trial." Tr. 23. In other words, as we understand it, she was telling the district court that Latimer did not want a fourth trial because it would be a hardship and not judicially economical. It may be that Latimer would have preferred to have testified at the third trial rather than proceeding to a fourth one, but we find nothing to support the notion that a particular "substantial hardship" to Ramchair was involved.

Appellate counsel also made a "substantial hardship" argument in her brief to the Appellate Division, but did not assert that a fourth trial, leaving Latimer available to testify, would represent a particular hardship to Ramchair, or explain why that would be so.

18

can testify to that particular matter." Tr. 22. But an advocate's exclusive knowledge of facts material to the trial is not listed as such an exception in DR 5-101(B). And the New York case law relied upon by appellate counsel in pursuing the state-court appeal does not establish such an exception.[8] See People v. Baldi, 54 N.Y.2d 137, 148-49 & n.1, 429 N.E.2d 400, 406 & n.1 (1981) (concluding that defense counsel was not constitutionally ineffective for, inter alia, testifying on behalf of client where doing so "strengthened the insanity defense").[9]

While appellate counsel pointed the Appellate Division to dicta from two out-of-state cases making reference to such an exception, see United States v. Ewing, 979 F.2d 1234, 1236 (7th Cir. 1992); United States v. Fogel, 901 F.2d 23, 26 (4th Cir. 1990), it was highly unlikely that that court would decide that the trial court had committed reversible error and abused its discretion in declining to rely on those cases.[10] It was,

_____

[8] Appellate counsel did not identify authority to support such an exception in her testimony to the district court.

[9] We also note that in Baldi, "there [was] some evidence that defendant was wary of strangers and trusted [defense counsel], so that [defense counsel's] withdraw as counsel might have been ill-advised." Id., 54 N.Y.2d at 149 n.1, 429 N.E.2d 406 n.1. We offer no view as to whether, under Baldi or otherwise, it would have been within the trial court's discretion to allow Latimer to testify at the third trial had it chosen to do so. Application of the advocate-witness rule is subject to the trial court's discretion. See Stober v. Gaba & Stober, P.C., 259 A.D.2d 554, 606 N.Y.S.2d 440 (2d Dep't 1999).

[10] Even the out-of-state cases relied upon by appellate counsel, although referring to an exception for an attorney's exclusive knowledge of facts material to the trial, did not apply it, and affirmed the decisions of trial courts prohibiting an

19

therefore, unsurprising that the Appellate Division denied Ramchair's state-court appeal without reference to them.

Appellate counsel was not wrong to argue for Ramchair's right to present a defense; rather, she was wrong to argue that it had to be vindicated by defense counsel Latimer serving as an advocate-witness in the third trial, and failing to argue that it should have been vindicated through the declaration of a mistrial. Where "conduct . . . has deprived [a criminal defendant] of a fair trial, the appropriate manner for defendant to raise the issue is by a motion for a mistrial." People v. Thompson, 79 A.D.2d 87, 108 n.19, 435 N.Y.S.2d 739, 754 n.19 (2d Dep't 1981). "At any time during the trial, the court must declare a mistrial and order a new trial of the indictment . . . [u]pon motion of the defendant, when there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, which is prejudicial to the defendant and deprives him of a fair trial." New York Criminal Procedure Law ("CPL") § 280.10. Because Ramchair was denied a fair trial, the state trial court erred as a matter of law in not granting the mistrial motion. Taking into account "the distorting effects of hindsight," Strickland, 466 U.S. at 689, we nonetheless conclude that appellate counsel's failure to raise the mistrial claim falls outside that category of "omissions by

advocate from testifying. See Ewing, 979 F.2d at 1236; Fogel, 901 F.2d at 26.

20

counsel that might be considered sound trial strategy," Henry v. Poole, 409 F.3d 48, 63 (2d Cir. 2005) (internal quotation marks omitted).[11]

"[S]tate appellate counsel's failure to argue the [issue in question] was below the standards of reasonably competent performance, for the claims [she] raised were extremely weak, while the [claim based on the issue in question] was particularly strong." Mayo, 13 F.3d at 534. It was also prejudicial. There is a reasonable probability that the Appellate Division and the Court of Appeals would have been swayed by the mistrial claim, because that claim was sound. "[A] defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." Henry, 409 F.3d at 63 (internal quotation marks omitted) (emphasis in original). We conclude, notwithstanding the district court's observation that the Court of Appeals intimated, after the fact, that it took a "dim" view of the mistrial claim, Ramchair IV, 671

---

[11] A "[d]efendant's motion for a mistrial and [the] Supreme Court's denial of that motion sufficiently preserved the question of law for [state-court appellate] review." People v. Smith, 97 N.Y.2d 324, 330, 766 N.E.2d 941, 945 (2002). In its brief submitted after this case was returned to us, the State cites People v. Weston, 56 N.Y.2d 844, 438 N.E.2d 873 (1982), for the proposition that the mistrial claim was not preserved because although Latimer specified the legal basis for the claim, he did not specify that he wished to withdraw as Ramchair's counsel. Weston does not support that proposition. In Weston, a motion for a mistrial on the ground that the State would not be able to connect certain evidence to the defendant did not preserve a claim that the trial judge should have prevented references to that evidence to avoid prejudice. The court explained that the claim of prejudice was separate from, and thus not preserved by, the claim regarding the State's ability to connect the evidence to the defendant.

F. Supp. 2d at 384, that there was a reasonable probability that the state courts would have recognized a sound claim had it been timely made, and Ramchair was prejudiced by appellate counsel's failure to raise it.

### D. The New York Court of Appeals' Application of Clearly-Established Supreme Court Precedent was Unreasonable

We assume, as the district court appears to have assumed, that the New York Court of Appeals applied the correct Supreme Court precedent governing ineffective assistance claims.[12] We conclude as did the district court, however, that the Court of Appeals applied the law unreasonably. As the Court of Appeals noted, "[a]ppellate advocacy is meaningful if it reflects a competent grasp of the facts, the law and appellate procedure, supported by appropriate authority and argument." People v. Ramchair, 8 N.Y.3d at 316, 864 N.E.2d at 1290 (internal quotation marks omitted). Appellate counsel, as we have explained, did not meet that standard here.

The Court of Appeals said that appellate counsel submitted a "comprehensive brief to the Appellate Division raising two strong claims on [the] defendant's behalf." Id. But, having omitted the only claim that was clearly meritorious, we cannot see how the brief can be said to have been "comprehensive."

---

[12] After noting that state criminal defendants have both a state and federal right to the effective assistance of appellate counsel, the Court of Appeals discussed only the "meaningful representation" standard developed under state law. People v. Ramchair, 8 N.Y.3d at 316, 864 N.E.2d at 1290.

The Court of Appeals also said that "appellate counsel might have determined as a matter of reasonable appellate strategy that there was a greater likelihood of success pursuing the right to present a defense argument, rather than focusing on the mistrial application." Id., 8 N.Y.3d at 317, 864 N.E.2d at 1291. But appellate counsel's testimony in the district court revealed that her decision to forego the mistrial claim was not a product of strategy, sound or otherwise, but of mistake. And, as we have explained, the "right to present a defense" argument was not an alternative to arguing the mistrial application; on the contrary, the mistrial application was the appropriate vehicle for vindicating the right to present a defense.

The Court of Appeals thus applied the law governing ineffective assistance of counsel unreasonably, and federal habeas relief is warranted.

E.  The District Court Did Not Abuse Its Discretion in Granting a New Trial

"Federal habeas corpus practice . . . indicates that a court has broad discretion in conditioning a judgment granting habeas relief. Federal courts are authorized . . . to dispose of habeas corpus matters as law and justice require." Hilton v. Braunskill, 481 U.S. 770, 775 (1987) (internal quotation marks omitted); accord, Levine v. Apker, 455 F.3d 71, 77 (2d Cir. 2006). "Cases involving Sixth Amendment deprivations are subject to the general rule that remedies should be tailored to the injury suffered from the constitutional violation and should not

unnecessarily infringe on competing interests." United States v. Morrison, 449 U.S. 361, 364 (1981).

In its order following our remand, the district court set forth its reasons for concluding that a new trial was the remedy best tailored to the constitutional violation in this case. Chief among them was the long delay Ramchair has endured since his conviction. Indeed, Ramchair appears already to have served more than half of his maximum sentence as a result of a variety of delays, some of them unreasonable and none of them apparently of his doing. Because remanding for a new appeal would further delay any new trial, and because the district court found the mistrial claim unassailably meritorious due to the unfairness of Ramchair's trial, the district court concluded that remanding for a new trial, without pausing for a new appeal, was appropriate.

Requiring a new trial was thus not an abuse of the district court's discretion to fashion a habeas remedy. See, e.g., Eagle v. Linahan, 279 F.3d 926, 944 (11th Cir. 2001) (remanding for new trial where appellate counsel was ineffective for failing to raise Batson challenge). In the cases in this Circuit relied upon by the State for the proposition that a remand for a new trial was beyond the district court's discretion, the court remanded for a new appeal with no discussion of why it was doing so rather than ordering a new trial. See Claudio v. Scully, 982 F.2d 798, 806 (2d Cir. 1992); Jenkins v. Coombe, 821 F.2d 158, 162 (2d Cir. 1987), cert denied,

24

484 U.S. 1008 (1988); <u>Barnes v. Jones</u>, 665 F.2d 427, 436 (2d Cir. 1981), <u>rev'd on other grounds</u>, 463 U.S. 745 (1983). None of the cases, nor any others of which we are aware, precludes a district court from ordering a new trial in circumstances such as those presented here. <u>But cf.</u> <u>Mapes v. Tate</u>, 388 F.3d 187, 194-95 (6th Cir. 2004)(affirming habeas relief of new state-court appeal for ineffective assistance of appellate counsel, and rejecting petitioner's request for ruling on underlying sentencing issue as "go[ing] far beyond neutralizing the constitutional deprivation suffered by the defendant." (internal quotation marks and alterations omitted).)

This is a matter committed to the sound discretion of the district court. We conclude that the district court acted within its discretion.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.

The mandate shall issue forthwith.